## El Pueblo de Puerto Rico, demandante y apelado, *v.* Santos Rosa, acusado y apelante.

No. 2861.—*Visto:* Noviembre 23, 1926.　*Resuelto:* Julio 30, 1927.

1. Derecho Penal—Apelación y Error, y Certiorari—Revisión—Conclusiones y Veredictos—Veredicto Sobre Prueba Contradictoria.—Cuando el jurado decide el conflicto en la prueba, su decisión debe acatarse en apelación, si en ella no existe error.

2. Derecho Penal—Apelación y Error, y Certiorari—Revisión—Errores no Perjudiciales—Resoluciones Dictadas Sobre la Evidencia Presentada—Resoluciones Sobre Mociones para Eliminar Evidencia.—La negativa a eliminar una pregunta, aún cuando ésta sea sugestiva, no es perjudicial, cuando por dicha pregunta se insiste en lo que ya había dicho el testigo con anterioridad.

3. Derecho Penal—Evidencia—Cuestiones Litigiosas *(Issues)*, y Pertinentes a los *Issues* y Prueba de Circunstancias Constitutivas del Delito *(Res Gestae)*—Relación de la Prueba con el Delito que se Investiga.—Declaraciones que se refieren a hechos ocurridos inmediatamente después de un suceso y que guardan relación con el asunto de la responsabilidad del acusado son partes del *res gestae* y admisibles en evidencia.

4. Testigos—Credibilidad, Impugnación, Contradicción y Corroboración—Manifestaciones Inconsistentes de Testigos—Testigos que Están Sujetos a Impugnación—Testigos Propios.—Uno puede repreguntar sus propios testigos sobre una cuestión dada acerca de lo que ellos han manifestado sobre dicha cuestión en ocasiones anteriores, si declaran contrario a lo que uno tenía el derecho a esperar.

5. Testigos—Del Examen—Modo de Tomar el Testimonio—Memoria del Testigo—Refrescar la Memoria—Memorándums o Escritos que Pueden Utilizarse para Ello—Declaraciones Prestadas en el Examen o Investigación Preliminar.—Cuando un testigo declara contrario a lo que él había testificado en la investigación preliminar del caso, el fiscal puede leerle parte de su declaración anterior con el fin de refrescarle la memoria.

6. Derecho Penal—Apelación y Error, y Certiorari—Récord y Procedimientos que no Están en Récord—Cuestiones Presentadas para Revisión—Revisión Limitada por el Propio Récord—Omisiones que Impiden Considerar las Cuestiones Levantadas.—Levantado como error el haberse admitido en evidencia una declaración escrita prestada por un testigo en la investigación preliminar, cuando el apelante no hace referencia sobre el particular a la exposición del caso ni nada se encuentra en ella sobre dicho particular, no hay base para considerar dicha cuestión en apelación.

*Resuelto* en reconsideración: Noviembre 30, 1927.

Testigos—Credibilidad, Impugnación, Contradicción y Corroboración—Manifestaciones Inconsistentes de Testigos—Evidencia para Sostener al Testigo Tachado—Prueba de Manifestaciones Consistentes con la Declaración Impugnada.—Cuando se ha tachado la veracidad de un testigo por declaraciones contradictorias no puede ser rehabilitado demostrando con una declaración suya anterior que en otras ocasiones el testigo hizo manifestaciones consistentes con la declaración impugnada; pero como no hubo ma-

nifestaciones contradictorias del testigo sino el haber dejado de declarar acerca de hechos sobre los cuales no fué preguntado y sobre los cuales no se demostró que tuviera el deber o la oportunidad de hablar, la admisión de su declaración anterior al juicio no es motivo para revocar la sentencia apelada.

SENTENCIA de *Tomás Bryan,* J. (Aguadilla), declarando culpable al acusado de Homicidio Voluntario, con costas. *Confirmada.*

*Buenaventura Esteves,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

Santos Rosa fué acusado del delito de asesinato en segundo grado por haber dado muerte a Manuel Torres y habiendo sido convicto en el juicio por un jurado del delito de homicidio voluntario, solicitó la celebración de un nuevo juicio y habiéndole negado la corte esa pretensión dictó sentencia condenándolo a la pena de tres años de presidio, interponiendo entonces apelación contra la negativa de nuevo juicio y contra la sentencia.

Para sostener el apelante sus recursos alega seis motivos de error refiriéndose los cinco primeros a errores que dice haber sido cometidos por la corte en la admisión de ciertas pruebas en el juicio y el sexto a que el veredicto del jurado y la sentencia son contrarios a las pruebas y a la ley. Comenzaremos por el último porque conociendo los hechos desde luego será más fácil decidir los otros motivos de error.

Aparece de la prueba de cargo que en la mañana del 2 de septiembre de 1924 estaban en una calle del pueblo de San Sebastián sentados en unos barriles y conversando, Manuel Torres, ahora interfecto, Tomás Montalván, conocido por Villa y Santiago López, cuando llegó allí Alejandro Rosa, conocido por Pito Rosa, hermano del acusado y le pegó una bofetada a Manuel Torres, quien entonces se le fué encima con algo que sacó del seno, que algunos testigos dicen ser un puñalito o un cuchillo envuelto en un papel, corriendo entonces Pito Rosa hacia la tienda que su her-

mano Santos Rosa tenía muy cerca de aquel sitio, pidiendo auxilio a su dicho hermano, diciendo que lo mataban: que Manuel Torres se quedó en el sitio en que estaba con los otros dos y que habiendo salido Santos Rosa de su tienda con un revólver en la mano se dirigió hacia Manuel Torres al que hizo un disparo, como a cuatro o cinco metros de distancia sin herirlo, después del cual Manuel Torres se fué para encima del acusado con un puñalito en la mano en cuyo momento Santos lo buscó más bajo con su revólver haciéndole dos disparos más, hiriéndole con el segundo de ellos, que le produjo la muerte pocos momentos después, volviéndose a la tienda, en la que según algunos testigos infirió con un cuchillo una herida en un brazo a su hermano Pito para hacer creer que lo hirió Manuel Torres.

La defensa del acusado aceptó en el juicio que Santos Rosa disparó contra Manuel Torres y lo mató, pero trató de probar que lo hizo en defensa de su hermano Pito, a cuyo efecto presentó prueba de que cuando Pito Rosa gritaba pidiéndole auxilio y cuando salió con el revólver y disparó a Manuel Torres éste iba con un cuchillo persiguiendo a su hermano, y que Manuel Torres era un hombre peligroso y pendenciero que había sufrido condenas por escalamiento, hechos que eran conocidos por el acusado, según éste declaró.

Si los hechos ocurrieron como los expone la prueba de la defensa el acusado había obrado en defensa de su hermano y estaría exento de responsabilidad criminal de acuerdo con los artículos 52 y 54 del Código Penal, pero de la prueba de cargo no resulta justificada la muerte causada por el apelante porque según ella Manuel Torres no estaba persiguiendo ni tratando de herir a Pito Rosa cuando el apelante le disparó y lo mató; y como el veredicto de culpabilidad del jurado demuestra que decidió el conflicto de esa evidencia dando crédito a la prueba del fiscal, debemos acatar su decisión ya que en ella no existe error.

Ahora estamos en condiciones de decidir los otros motivos de la apelación.

[2] Se funda el primero en haber declarado la corte sin lugar la petición de la defensa para que fuese eliminada la siguiente pregunta del fiscal al testigo de cargo Santiago López: "¿Entonces Manuel Torres no lo siguió?"

Ese testigo declaró que estando sentado en unos barriles con Villa y con Manuel Torres llegó Pito Rosa y le pegó una bofetada a Torres quien se le fué para encima con una cosa que sacó del seno, habiendo corrido entonces Pito Rosa llamando a su hermano, diciendo, "¡Ay, Santos, que me matan!" y que el declarante, Villa y Manuel Torres se quedaron allí parados, preguntándole el fiscal "¿Entonces Manuel Torres no lo siguió?" contestando el testigo, "No, señor." Después de esa respuesta la defensa solicitó que fuese eliminada la pregunta por ser sugestiva pero la corte negó esa petición.

Como el testigo había declarado antes de hacerle esa pregunta que Manuel Torres se había quedado en el sitio que estaba, no vemos en qué pueda perjudicarle, aun siendo sugestiva, pues no tenía otro objeto que insistir en lo que ya había dicho el testigo.

[3] El segundo y tercer motivo de error los trata conjuntamente el apelante y lo mismo haremos nosotros. Son ellos por haber permitido la corte al testigo Juan Pérez que declarase sobre lo que hiciera Santos Rosa a su hermano Pito después del suceso; y por haber permitido al fiscal examinar a dos de sus testigos sobre hechos ocurridos después de la muerte de Manuel Torres, independientes del asunto en controversia y que no formaba parte del *res gestae*. Dichas preguntas se referían a la herida que al regresar a la tienda dió Santos Rosa a su hermano Pito en un brazo.

Esas declaraciones son partes del *res gestae* porque se refieren a un hecho ocurrido inmediatamente después de los tiros disparados a Manuel Torres y guardan relación con el asunto de la responsabilidad del acusado.

[4, 5] El cuarto y quinto motivo los trata también con-

juntamente el apelante en su alegato. Uno de ellos es por haber resuelto la corte inferior que el fiscal podía examinar a su testigo Juan Cubero sobre lo que había declarado antes del juicio al fiscal y al Juez Municipal de San Sebastián; el otro es por haber permitido que el fiscal leyera a sus testigos las declaraciones prestadas por ellos ante el Juez Municipal en la investigación preliminar que practicó en este caso, y al admitir como evidencia una de dichas declaraciones.

Ocurrió en el juicio de este caso, como sucede en muchos, que algunos testigos del fiscal declararon alguna cosa distinta de la que habían testificado en la investigación preliminar del caso y el fiscal les leyó parte de sus anteriores declaraciones para refrescarles la memoria.

El artículo 243 del Código de Enjuiciamiento Criminal permite a la parte que presenta un testigo contradecirlo demostrando que en ocasiones anteriores ha hecho manifestaciones que no concuerdan con su actual declaración y eso fué lo que hizo el fiscal en este caso. En el caso de *El Pueblo v. Jacobs,* 49 Cal. 384, se dijo lo siguiente:

"Existe indudablemente alguna confusión en las decisiones respecto a ésta y a cuestiones similares sobre el extremo a que una parte puede llegar al contradecir las declaraciones de sus propios testigos si inesperadamente declaran en su contra. La regla que más de acuerdo está con la razón, opino, es la sentada en Greenleaf, tomo 1, sec. 444–2; Redfield's edition; . . . Uno puede repreguntar sus propios testigos si éstos declararen contrario a lo que uno tenía el derecho a esperar, acerca de lo que el testigo había manifestado sobre dicha cuestión en ocasiones anteriores, ya fuere en la corte o en cualquier amplia oportunidad de exponer la cuestión claramente ante el jurado. Pero uno no puede hacer esto con el único fin de desacreditar la veracidad del testigo; ni puede permitírsele que pruebe las manifestaciones contradictorias del testigo en otras ocasiones, sino que está limitado a probar los hechos mediante otra prueba."

[6] En este caso el fiscal leyó sus declaraciones anteriores a esos testigos para que explicasen sus contradicciones

y ellos aceptaron que era verdad lo que constaba en las declaraciones escritas que se leyeron. En cuanto a que se admitiera como evidencia del fiscal una de esas declaraciones escritas, ni el apelante hace referencia en este particular a la exposición del caso ni nosotros encontramos en ella tal cosa.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Sr. Wolf no intervino.

### EN RECONSIDERACIÓN

No. 2861.—*Resuelto*: Noviembre 30, 1927.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

En la opinión escrita al confirmar nosotros la sentencia apelada en este caso dijimos lo siguiente: "En cuanto a que se admitiera como evidencia del fiscal una de esas declaraciones escritas, ni el apelante hace referencia en este particular a la exposición del caso ni nosotros encontramos en ella tal cosa."

Por esa manifestación se nos pide la reconsideración de nuestra sentencia alegándose que en la exposición del caso consta lo siguiente: "Fisc.—Presento la declaración dada por Juan Pérez ante el juez municipal de San Sebastián, puesto que ha sido impugnada por la defensa, deseo presentarla como prueba para probar que la misma declaración que dió aquí hoy, la dió ante el Juez Municipal de San Sebastián el mismo día que ocurrieron los hechos. Llamando la atención que esta palabra y esto que dice 'ojo' con lápiz, son puestos por mí."

El no haber hecho referencia concretamente el apelante en su alegato a este incidente ocurrido en la declaración de Juan Pérez y el no haber citado la página de la exposición del caso en que se hallaba, como hemos dicho varias veces que debe hacerse para no tener que estar nosotros buscando un particular entre los muchos que suelen ocurrir en el jui-

cio, ha motivado nuestro error de decir que no constaba nada en la exposición del caso, pero, como diremos, no es motivo para dejar sin efecto la sentencia dictada.

Declarando Juan Pérez como testigo del fiscal dijo, entre otras cosas, que después de haber disparado Santos Rosa contra Manuel Torres se fué para su tienda· y allí le dió una herida con un cuchillo a su hermano Pito para que dijeran que fué el muerto. A preguntas de la defensa del acusado declaró que las anteriores manifestaciones las había hecho también al fiscal en su oficina y ante el jurado. Entonces la defensa del acusado manifestó que impugnaba la declaración· de ese testigo con otra declaración prestada por él en un juicio anterior, en la que no aparece que el testigo declaró sobre la herida hecha por Santos Rosa a su hermano Pito, pero tenemos que hacer constar que sobre ese extremo no se le hizo pregunta alguna en el interrogatorio del fiscal ni en el de la defensa.

Para rebatir esta prueba de la defensa ofreció el fiscal la declaración dada por Juan Pérez ante el Juez Municipal de San Sebastián para demostrar que la misma declaración que dió en el juicio la había dado ante dicho juez el día que ocurrieron los hechos y fué admitida con la oposición de la defensa.

Aunque esa declaración prestada por el testigo ante el Juez Municipal de San. Sebastián no ha sido incluída en la transcripción que tenemos ante nosotros, sin embargo, podemos decir que su admisión no es motivo para revocar la sentencia apelada. La regla general o la mejor regla es que cuando se ha tachado la veracidad de un testigo por declaraciones contradictorias, no puede ser rehabilitado demostrando que en otras ocasiones el testigo hizo manifestaciones consistentes con la declaración impugnada. *People v. Doyell,* 48 Cal. 85, 40 Cyc. 2760. Según se indica en dicho caso, el mero hecho de hacerse las manifestaciones inconsistentes tendería a impugnar al testigo. Agregarle un poco de peso a una u otra de las manifestaciones inconsis-

tentes, al igual que otras materias colaterales, es impropio en un juicio.

No obstante, en este caso no hubo manifestaciones verdaderamente inconsistentes, sino meramente el hecho de dejar un testigo de declarar con respecto a hechos acerca de los cuales nunca fué preguntado y sobre los que no se demostró que tuviera el deber o la oportunidad de hablar.

Hecha la aclaración consignada al principio tenemos que declarar que no hay motivo para dejar sin efecto nuestra sentencia en este caso por lo que debe ser *negada la moción de reconsideración solicitada.*