El Pueblo de Puerto Rico, demandante y apelado, *v.* José Lafontaine, acusado y apelante.

No. 4322.—*Sometido:* Marzo 25, 1931. *Resuelto:* Enero 19, 1932.

A. *Reyes Delgado,* abogado del apelante; R. A. *Gómez, Fiscal* abogado de *El Pueblo,* apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

El Fiscal del Distrito de Arecibo formuló acusación contra José Lafontaine imputándole la comisión de un delito de asesinato consistente en haber dado muerte con malicia premeditada al ser humano Rogelio González agrediéndole con una pistola.

Llegó la causa a juicio y la corte, de acuerdo con el veredicto del jurado que declaró al acusado culpable del delito de homicidio involuntario, dictó sentencia imponiéndole la pena de dos años de presidio con trabajos forzados.

No conforme el acusado apeló señalando en su alegato la comisión de cuatro errores que argumenta extensamente.

El primero consiste en haber permitido la corte, con la oposición de la defensa, que el fiscal del distrito leyera

de un documento que se dijo ser una declaración jurada del testigo de cargo Andrés de Jesús y en negar después la eliminación de dicha declaración o *affidavit*.

Para el mejor estudio de la cuestión suscitada, parece conveniente copiar toda la parte del récord que se refiere a los incidentes que dan lugar al señalamiento de error. Declaraba el testigo Andrés de Jesús contestando al fiscal:

"P. ¿Qué ocurrió en la casa de José Lafontaine el día 15 de enero de este año, si ocurrió algo y lo sabe?—Pues lo que ocurrió fué, que como a las nueve de la noche salí con Ramón de Jesús y Luis Maldonado y ellos cogieron para su casa y yo me quedé cuidando unas chinas que tenía en la orilla de la carretera.—P. ¿Dónde?—Frente a la casa de Juan Soto, y entonces, como de diez a once de la noche sentí una detonación, un disparo, pero no hice aprecio de eso, y entonces, al poco tiempo bajó Lafontaine a la casa de Juan Soto y lo llamó, y Juan Soto se tiró abajo con Lafontaine y Lafontaine me dió un papel para que se lo llevara a la casa de Ramón Márquez, y al regresar de casa de Ramón Márquez me dirigí a la casa de Lafontaine, cuando me encontré a Rogelio González en la casa de Lafontaine herido en el cuarto de él.—Hon. Fiscal. Este testigo había hecho manifestaciones anteriormente que están en contradicción con las que hace actualmente y el fiscal se propone impugnar su declaración.—Abogado Sr. Reyes Delgado. La Defensa ahora sostiene que debe hacerse saber si esas manifestaciones fueron hechas por escrito o habladas, y si fueron por escrito, que las mismas se muestren al testigo, y antes de pasar el documento al testigo se le dé una oportunidad a la defensa de conocer y ver dicho documento, con el cual o del cual el fiscal pretende impugnar la veracidad de su propio testigo.—Hon. Fiscal. La Ley no dice que tenga que presentar documento por escrito, y si fueron por escrito mejor todavía, y tengo las manifestaciones y las voy a leer al testigo.—Abogado Sr. Reyes Delgado. Antes de leer ningún documento al testigo ó de presentar el mismo para su consideración la defensa debe tener una oportunidad para ver dicho documento o escrito.—Hon. Fiscal. No es cuestión de presentar un documento en evidencia, sino de recordar al testigo manifestaciones que ha hecho anteriormente, que constan por escrito y el Fiscal las tiene.—Hon. Juez. Continúe el Fiscal.—Abogado Sr. Reyes Delgado. Excepción.—P. Recuerda haber declarado ante el Juez Municipal de Utuado y ante mí, en la Corte Municipal, allá para el día 5 de febrero de este año? Recuerda haberme visto allí? Recuerda

que me vió?—Sí, señor.—P. Estaba el Juez Municipal también?—
Sí, Señor.—P. Ud. recuerda si declaró ese día 15 de enero, estando
Ud. en la casa de José Lafontaine, situada en el barrio de Río Abajo
de Utuado, y que a las diez de la noche llegó Rogelio González, peón
por meses de Lafontaine, con una vaca que se había perdido, y al
llegar comunicó dicho Rogelio a Da. Carmita González, madre de La-
fontaine, que el becerro se mamó la vaca; que dicho José Lafontaine
estaba acostado en una cama, dijo, 'Conque se mamó la vaca?' y co-
gió una pistola que estaba sobre una silla, y mirando a Rogelio que
estaba parado fuera de la casa cerca de un pesebre, díjole, 'Mereces
un tiro', y a la vez le disparó con la pistola?—Abogado Sr. Reyes
Delgado. Vamos a pedir a la Corte que ordene la eliminación de toda
la declaración que ha pretendido leer el Fiscal, y que se instruya a
los Sres. del Jurado que en ningún momento estos señores del Ju-
rado deben tener en mente o considerar en forma alguna todo eso.
Y nosotros ahora pedimos esto, porque lo que se pretende es traer
por el Ministerio Público una declaración que de otro modo no puede
traer, para que la considere el Jurado so pretexto de que va a im-
pugnar una declaración de un propio testigo suyo.—Hon. Juez. Sin
lugar la eliminación.—Abogado Sr. Reyes Delgado.—Excepción.—P.
Oyó lo que le dije?—Sí, señor.—P. No es necesario que se lo repita?
Recuerda haber declarado eso? Sí o no?—No recuerdo.—P. No re-
cuerda haber añadido, además, que después de ese disparo que le hizo
José Lafontaine 'Rogelio cayó al suelo diciendo, 'Ay, Ay,' y que La-
fontaine inmediatamente cogiendo una sábana de la cama corrió en
donde estaba Rogelio, lo cogió del suelo y lo llevó a la cama?'—Abo-
gado Sr. Reyes Delgado. Para establecer la misma oposición ante-
rior, para no aparecer aceptando la continuación del interrogatorio.
Nos oponemos por las mismas razones y fundamentos con que nos
opusimos anteriormente.—Hon. Juez. Sin lugar la oposición.—P.
Recuerda haber declarado eso, sí o no?—No recuerdo.—P. Y todo
esto que le he leído es verdad o no es verdad?—No, señor.—P. No es
verdad?—No, señor.''

El artículo 245 del Código de Enjuiciamiento Criminal,
dice:

''Artículo 245. También puede ser impugnada la veracidad de
un testigo por medio de prueba que demuestre que en ocasiones an-
teriores ha hecho manifestaciones que no concuerdan con su actual
declaración; pero antes de hacerlo, se le referirán dichas manifesta-
ciones, con expresión de la época, lugares y personas que hubieren
estado presentes al hacerlas, y se les preguntará si dichas manifes-

taciones fueron hechas por él, permitiéndosele que las explique, si contestare afirmativamente. Si las manifestaciones fueren escritas, se enseñarán al testigo antes de interrogarle acerca de ellas."

Y el 159 de la Ley de Evidencia, lee como sigue:

"Artículo 159. También podrá tacharse a un testigo mediante evidencia de que hizo, en otras épocas, manifestaciones incompatibles con su actual declaración; pero antes de poder hacer esto, habrá que referirle las manifestaciones, con las circunstancias de fechas, lugares y personas que se hallaban presentes; se le preguntará si hizo esas manifestaciones, y de haberlas hecho, se le permitirá que las explique. Si las manifestaciones se hicieron por escrito, deberán enseñarse al testigo antes de podérsele interrogar acerca de ellas."

Ambos preceptos son substancialmente iguales y en ambos el Legislador expresamente dispuso que si las manifestaciones fueren escritas, se enseñarán al testigo antes de interrogarle acerca de ellas.

Underhill en "Criminal Evidence" trata con mucha claridad esta cuestión. Dice en las secciones 238, 239 y 240 de su obra:

"*Impugnación de un testigo adverso por medio de manifestaciones contradictorias. Necesidad de fundar las bases.* Al testigo al cual se desea impugnar, se le puede preguntar en el contrainterrogatorio, si no ha hecho manifestaciones fuera de la corte tendentes a probar la culpabilidad del acusado y que resultan inconsistentes o en contradicción con su testimonio directo en la corte. Todas las circunstancias que hayan rodeado las manifestaciones fuera de la corte, deben estar comprendidas en la pregunta. Si él no admite haberlas hecho en la ocasión que se le ha especificado que las hizo, entonces puede probarse que él realmente hizo tales manifestaciones.

"El mismo procedimiento puede ser usado para impugnar un testigo durante el interrogatorio directo, o sea, por la parte que lo presenta en caso que dicho testigo haya resultado hostil a la parte que lo ha presentado. Pero en cualquiera de los casos es siempre absolutamente esencial y justo el sentar las bases para contradecirlo, llamando su atención en la pregunta que se le haga clara y distintamente a las circunstancias de tiempo, lugar y personas bajo las cuales dichas manifestaciones contradictorias fueron hechas. Pero habiéndole llamado la atención directamente a las exactas circunstancias

bajo las cuales las manifestaciones contradictorias o inconsistentes fueron hechas, el testigo está perfectamente protegido contra sorpresa. El tiene el derecho de explicar la contradicción. Cuando su memoria se ha refrescado por todos los detalles, él puede estar en condiciones de demostrar que estaba honradamente equivocado en la primero ocasión o que las personas entonces presentes no lo entendieron o lo interpretaron mal. Al testigo impugnado debe premitírsele al declarar, relatar los hechos que expliquen o reconcilien las manifestaciones inconsistentes o que demuestren la relación de unas y otras entre sí y el significado y propósito de las mismas.

"Si el testigo declara que no recuerda haber hecho tales manifestaciones, él puede ser contradicho inmediatamente sin más sentar bases para la introducción del testimonio que lo contradiga.

"*Impugnación por medio de affidavits contradictorios, deposiciones u otros documentos.*—Las reglas que gobiernan las impugnaciones por medio de manifestaciones contradictorias, según se ha expresado antes, son igualmente aplicables a los casos en que las declaraciones contradictorias o inconsistentes son orales o contenidas en affidavits o deposiciones o en publicaciones hechas por el testigo referentes al hecho acerca del cual él declara.

"Así, lo mismo sea que declare el acusado o cualquier testigo en su defensa, puede ser contradicho por manifestaciones hechas por él en affidavits que fueron usados por dicho acusado en una moción de suspensión del caso.

"Manifestaciones contradictorias contenidas en affidavits, deposiciones y en otros documentos son, sin embargo, consideradas desde un punto de vista diferente con manifestaciones hechas oralmente a los efectos de impugnar un testigo.

"*Escritos que contengan evidencia contradictoria, deben ser mostrados al testigo que se trata de impugnar.*—El escrito por medio del cual se trata de contradecir al testigo, debe mostrársele durante su declaración, de tal manera que él pueda leerlo o dicho escrito le pueda ser leído a él. Debe preguntársele si lo escribió o lo firmó y si admite eso, debe llamársele entonces la atención a las contradicciones o inconsistencias. Si él admite que él escribió o lo firmó todo el escrito debe ser leído al jurado como la mejor evidencia de lo que el escrito contiene. Si él niega que es el autor, entonces puede probarse por evidencia adecuada que él lo escribió. El taquígrafo que tomó la declaración en un juicio anterior, puede leer de sus notas si él jura que dichas notas son fieles y exactas, a los efectos de impugnar el testigo, preguntándosele al testigo si él declaró en el juicio anterior."

Creemos que el precepto legal aplicable tanto a los casos criminales como a los civiles es tan terminante que no era necesaria mayor explicación que. referirse a él para concluir que el error señalado fué cometido, pero hemos transcrito lo dicho por el comentarista porque arroja luz sobre una cuestión que ha sido muy discutida en este tribunal bajo diferentes aspectos. Véanse los casos de *Pueblo* v. *Méndez*, 39 D.P.R. 653; *Pueblo* v. *Rosa*, 37 D.P.R. 428; *Pueblo* v. *Plata*, 36 D.P.R. 590; *Pueblo* v. *Hernández*, 36 D.P.R. 427; *Pueblo* v. *González*, 36 D.P.R. 867; *Pueblo* v. *Ríos*, 34 D.P.R. 546; *Pueblo* v. *Torres*, 33 D.P.R. 185; *Pueblo* v. *Ramírez de Arellano*, 25 D.P.R. 263; *Pueblo* v. *Santiago*, 16 D.P.R. 469; *Pueblo* v. *Rojas*, 16 D.P.R. 251; *Pueblo* v. *Kent*, 10 D.P.R. 343; *Pueblo* v. *López*, 8 D.P.R. 577; *Pueblo* v. *Ruiz*, 7 D.P.R. 130; *Pueblo* v. *Díaz a. Martillo*, 5 D.P.R. 124 (2ª. ed.); *De Gracia* v. *Guardiola*, 37 D.P.R. 834; *Vélez* v. *P. R. & Am. Ins. Co.*, 32 D.P.R. 123; *Sosa* v. *Cardona*, 30 D.P.R. 274 y *Méndez* v. *Martínez*, 24 D.P.R. 241.

Resalta aún más evidentemente el error cometido, cuando se observa el modo como el fiscal se condujo durante todo el incidente. El medio que se da a una parte para impugnar la veracidad de un testigo demostrando que en ocasiones anteriores hizo manifestaciones contrarias a su actual declaración, no debe servir para introducir esas otras manifestaciones como prueba.

En su alegato el fiscal sostiene que no se cometió error alguno porque "lo esencial era que se le hicieran conocer al testigo las manifestaciones hechas anteriormente, bien se hubieran hecho oralmente o por escrito; y que si habían sido hechas por escrito se le dieran para que las leyera o se le leyeran a él, según expresa la jurisprudencia que hemos dejado transcrita. Y esto último fué lo que hizo el fiscal en el caso de autos."

Si, como ha sucedido en otros casos, no hubiera existido la oposición de la parte contraria, la cuestión no hubiera

podido levantarse en apelación, pero aquí la parte contraria pidió repetidamente a la corte que le reconociera el derecho a leer por sí misma el escrito y la corte le negó ese derecho. El escrito pudo contener otras manifestaciones favorables a la actual declaración del testigo.

Además, la defensa pidió finalmente a la corte la eliminación de la declaración que leyó el fiscal, instruyéndose al jurado que en ningún momento la tuviera en mente, porque lo que se pretendía por el ministerio público era presentar una declaración que no podía de otro modo, y la corte se limitó a decir: "Sin lugar la objeción."

Siendo fundamental el error cometido, es innecesario examinar los otros señalamientos. *Debe revocarse la sentencia apelada y devolverse la causa para la celebración de un nuevo juicio.*