El Pueblo de Puerto Rico, demandante y apelado, *v.* Amador Santos, acusado y apelante.

Núm. 12655.—*Sometido:* Noviembre 10, 1948. *Resuelto:* Diciembre 21, 1948.

*Antonio J. Matta,* abogado del apelante; *Hon. Procurador General Luis Negrón Fernández* y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

El fiscal de la Corte de Distrito de Humacao radicó acusación contra Amador Santos y Justo Alvira, por el delito de extorsión, alegando que el día 14 de agosto de 1946, en Fajardo, "el primero como miembro de la Junta Local de Suministros de Fajardo y el segundo alegando ser cliente del comerciante Sabat Hernández, ilegal, voluntaria y maliciosamente, obtuvieron o sacaron propiedad consistente en dinero al referido Sabat Hernández, obteniendo su consentimiento mediante el uso del temor, producido éste por amenazas de denunciar a dicho comerciante de haber cometido el delito de vender al acusado Justo Alvira artículos de primera necesidad a precios sobre lo estipulado o permitido por la ley."

Los acusados solicitaron juicio por separado y visto el juicio contra Amador Santos, ante tribunal de derecho, fué

declarado culpable del delito imputádole.(¹)  Antes de dictarse sentencia el acusado radicó una moción de nuevo juicio alegando la comisión de ciertos errores de derecho durante la celebración de la vista y el descubrimiento de nueva evidencia, la cual fué declarada sin lugar, condenando la corte al acusado a cumplir de uno a cinco años de presidio con trabajos forzados.  De la sentencia dictada, así como de la resolución denegando su solicitud de nuevo juicio, apeló el acusado ante nos, imputándole a la corte inferior la comisión de siete errores.

■■■ Como primer señalamiento se alega que erró la corte inferior al sostener que los artículos 456 y 459 del Código Penal imputan delitos independientes y que por lo tanto la corte actuó sin jurisdicción al.seguir la vista del caso a base de que el delito imputado era un delito grave, imponiéndole sentencia de presidio.  Sostiene el apelante que al fiscal acusarlo de extorsión lo menciona en la acusación "como miembro de la Junta Local de Suministros de Fajardo", y que esta imputación convierte el delito en un *misdemeanor,* debido a que el artículo 459, ed. 1937, dispone que "Toda persona que cometiere cualquiera extorsión pretextando derecho para ello como funcionario público, siempre que no estuviere señalada distinta pena en este Código, será reo de *misdemeanor."*

El artículo 456 del Código Penal, ed. 1937, que define el delito de extorsión, lee como sigue: "Constituye extorsión el acto de sacar alguna cosa a otra persona, obteniendo el consentimiento de ésta mediante el abuso de la fuerza o del temor, o pretextando derecho para ello como funcionario público."

El delito de extorsión, por tanto, tiene dos modalidades, a saber, sacar alguna cosa a otra persona, (1) obteniendo el consentimiento de ésta mediante el abuso de la fuerza o del

---

(¹)El juicio contra Justo Alvira se celebró ante jurado y fué declarado culpable.  Su sentencia fué confirmada por este Tribunal, pág. 237, ante.

temor, (2) pretextando derecho para ello como funcionario público. El fiscal en este caso acusó bajo la primera modalidad del artículo 456, imputando en la acusación el haber obtenido dinero mediante el uso del temor, producido éste por amenazas de denunciar al comerciante Sabat Hernández por haber vendido ciertos artículos a precios no permitidos por la ley. El solo hecho de haberse descrito en la acusación al acusado "como miembro de la Junta Local de Suministros", no conlleva la implicación de que el acusado obtuvo dinero pretextando derecho para ello como funciocionario público, y que, por tanto, el delito imputado sea un *misdemeanor*. La imputación específica, el nervio de la acusación, es que el dinero se obtuvo debido al temor mediante amenazas de denunciar al comerciante. No se cometió el primer error.

▮▮▮▮ Por el segundo se sostiene que erró la corte al denegar el pliego de particulares solicitado. El fin que perseguía el acusado por medio de dicho pliego era saber si se le estaba acusando como funcionario público; que se le informara la cantidad de dinero obtenida por el acusado de Sabat Hernández, el comerciante agraviado; cuáles fueron las manifestaciones y actuaciones del acusado que indujeron al comerciante a entregar el dinero, y personas presentes al dársele el dinero.

En cuanto a si se le acusaba como funcionario público o no, ya hemos visto, al resolver el primer error, que no se le estaba acusando como funcionario público (y esto lo admitió el fiscal de la corte inferior al discutirse la moción de especificación, lo que equivalía a informar al acusado de ese hecho), toda vez que la acusación claramente le imputaba que había obtenido el dinero del comerciante por medio del temor, producido éste por amenazas de denunciar a dicho comerciante.

Hemos resuelto que la concesión de una especificación de particulares es discrecional en la corte ante la cual ha de

celebrarse el juicio y que la resolución de ésta denegándola no será revocada a menos que las circunstancias del caso demuestren claramente que su denegación impidió al acusado preparar debidamente su defensa. *Pueblo* v. *Ramírez,* 50 D.P.R. 234. Empero, después de una cuidadosa lectura de la transcripción de evidencia no encontramos fundamento para concluir que debido a la falta de especificaciones el acusado no pudo preparar su defensa, ya que él negó haber intervenido en la reunión en que se exigieron y entregaron los $200. No se perjudicaron por tanto los derechos sustanciales del acusado al negársele dicho pliego. *Pueblo* v. *Berenguer,* 59 D.P.R. 81; *Pueblo* v. *Berdecía,* 59 D.P.R. 318.

En el tercer señalamiento se alega que erró la corte inferior al admitir en evidencia la declaración de Ángel Correa sobre transacciones habidas entre el apelante y Sabat Hernández el día 12 de agosto de 1946, cuando el fiscal alega en la acusación que el delito se cometió el 14 de agosto de 1946. A través de la declaración de Ángel Correa el fiscal trataba de probar que el apelante le pidió dos dólares al comerciante Sabat Hernández; que al no tener dinero para dárselos, Hernández se los pidió prestados a Ángel Correa; que él se los prestó y vió cuando Hernández se los entregó al apelante. Según la prueba, estos dos dólares le fueron pedidos a Hernández por el apelante después de éste haberle dicho que Justo Alvira, el otro acusado, le había informado que el Sr. Hernández le había vendido unos artículos a sobreprecio. El apelante en aquel momento le recomendó que tratara de arreglar ese asunto, pues era uno de cárcel.

Arguye el apelante que esta declaración era inmaterial e impertinente. Aceptando que lo fuera no vemos en qué forma perjudicó al apelante. El comerciante Sabat Hernández ya había declarado que había cogido los dos dólares prestados a Ángel Correa para dárselos al apelante. La declaración de Correa tendió a corroborar ese testimonio.

El hecho de que esa transacción tuviera lugar el día 12 de agosto y no el día 14, no la hace inadmisible. De acuerdo con la evidencia presentada, el día 12 de agosto, o sea el día que se le entregaron los dos dólares al acusado, fué cuando comenzó la transacción que culminó en la entrega por Sabat Hernández de los doscientos dólares al coacusado Justo Alvira dos días después.

El cuarto error señalado es más serio. Consiste en no haber admitido la corte inferior evidencia sobre manifestaciones anteriores contradictorias de Sabat Hernández, ofrecidas por la defensa con el fin de impugnar la credibilidad de este testigo principal del fiscal. Como hemos visto, Sabat Hernández es el comerciante a quien, según la acusación, se exigió bajo amenaza de denunciarlo por el apelante y por Justo Alvira, la entrega de los $200. A ese efecto declaró en el interrogatorio directo. En el contrainterrogatorio el abogado del apelante trató, en distintas formas, de sentar las bases para impugnar la veracidad de su testimonio haciéndole referencia a manifestaciones suyas anteriores contradictorias y favorables al acusado y luego, como parte de la de descargo, trató de presentar prueba sobre dichas manifestaciones. En ambas ocasiones el fiscal se opuso al interrogatorio sosteniendo que para cumplir con el artículo 159 de la Ley de Evidencia (²) y la jurisprudencia "esa declaración (anterior) tiene que haber sido hecha por escrito y jurada y presentada al testigo con indicaciones de fecha, mes, las personas presentes, mostrándole la declaración al testigo o leyéndosele" (pág. 54 T. de E.), ya que el "Artículo 159, no contempla la impugnación de la credibili-

---

(²)Este artículo dispone: "También podrá tacharse a un testigo mediante evidencia de que hizo, en otras épocas, manifestaciones incompatibles con su actual declaración; pero antes de poder hacer esto, habrá que referirle las manifestaciones, con las circunstancias de fechas, lugares y personas que se hallaban presentes; se le preguntará si hizo esas manifestaciones, y de haberlas hecho, se le permitirá que las explique. Si las manifestaciones se hicieron por escrito, deberán enseñarse al testigo antes de podérsele interrogar acerca de ellas."

dad de un testigo nada más que cuando está hecha por escrito la declaración jurada." (Pág. 55 T. de E.) La corte inferior preguntó al fiscal: "¿De manera que la credibilidad de un testigo solamente puede ser impugnada por manifestaciones escritas?", contestando el fiscal: "Escritas, ésa es la teoría del fiscal; manifestaciones escritas que hay que dárselas a leer al testigo." (Pág. 55 T. de E.) La pregunta que dió lugar a este incidente fué ésta: "Dígame testigo, ¿no es cierto que el día 16 de agosto de 1946, compareció Ud. con Amparo Rodríguez ante el Juez Municipal Ledo. Jaime Llavina Aponte, que fueron para ser interrogados por el Juez en cuanto a estos hechos y que le manifestó Ud. al Juez: 'Yo a Amador le agradezco lo que ha hecho; lo que quiero es que Justo me devuelva el dinero. . . .' Esas palabras, ¿las dijo o no las dijo Ud.?"

La corte resolvió que la pregunta era impertinente e inmaterial pues se relacionaba con hechos ocurridos el día 16 de agosto, diciendo: Para demostrar que el testigo ha hecho manifestaciones contrarias a las que ha hecho aquí se debe de acuerdo con la ley hacer eso. (sic) Con lugar la objeción."

El acusado hizo constar en récord lo siguiente: "Respetuosamente vamos a solicitar la reconsideración. Nos basamos, Sr. Juez, en que todas estas preguntas que estamos haciendo, están relacionadas directamente con estos hechos. Estos hechos supuestamente ocurrieron el día 14 y el día 16 el testigo fué llamado a declarar ante el Secretario de la Junta, cuya declaración vamos en su oportunidad a presentar ante esta Corte; y el mismo día 16, también declaró ante el Juez Municipal sobre estos hechos. Y estamos sentando las bases para traer el testimonio del Juez en su debida oportunidad. Estamos preguntando solamente si existió o no la conversación de él con el juez."

Al presentar su prueba el acusado llamó como testigo al Juez Municipal de Fajardo, Jaime Llavina Aponte, quien

empezó a declarar acerca de la conversación que tuvo con Sabat Hernández en relación con el asunto de la presunta extorsión de que había sido objeto, empero el fiscal se opuso y la corte no permitió que continuara declarando. Hizo constar el testigo que no tomó declaraciones escritas. Formuló la defensa otra pregunta, fué objetada por el fiscal, no admitida por la corte, y ocurrió lo siguiente:

"*Defensa:* Nosotros vamos a solicitar la reconsideración, porque en un caso de esta naturaleza dejar a la defensa sin armas. . . Nosotros presentamos esta mañana preguntas para probar manifestaciones contrarias. Con el testimonio del testigo Jaime Llavina Aponte íbamos a demostrar que en su investigación oficial, el testigo Sabat Hernández le hizo a él manifestaciones que son completamente distintas a las que hizo en la silla testifical y entendemos que, habiendo sido sentadas las bases, es permisible que este testigo ahora declare sobre ellas, para que la Corte pueda estar en condiciones de darle el peso que merezca la declaración de Sabat Hernández. Si la Corte insiste en que las manifestaciones o la declaración de Sabat Hernández al día siguiente de los hechos no es admisible, en realidad nosotros estamos en un estado de indefensión.

*Fiscal:* ¿Y la ley de evidencia . . .?

*Defensa:* La ley de evidencia dice que son admisibles manifestaciones contradictorias de un testigo después de sentadas las bases.

*Sr. Juez:* ¿Cómo se sientan las bases. . .?

*Defensa:* Esta mañana al testigo Sabat Hernández le pregunté si era o no cierto que hiciera determinadas manifestaciones ante determinada persona y en determinada fecha. . .

*Sr. Juez:* Si había asistido a una investigación que se hizo ante el Juez Municipal. . .

*Defensa:* Y dijo que sí. También le pregunté si había hecho estas manifestaciones y vino la objeción del Fiscal.

*Sr. Juez:* La Corte mantiene su resolución."

Basta una lectura del artículo 159 de la Ley de Evidencia, supra, y del artículo 245 del Código de Enjuiciamiento Criminal, cuyas disposiciones son similares, para darse cuenta de que la teoría del fiscal de la corte inferior en cuanto a que la única forma de impugnar la veracidad de un testigo es mediante declaraciones escritas anteriormente prestadas, es

insostenible. Nunca hemos resuelto tal cosa. De acuerdo con los preceptos citados y nuestra jurisprudencia interpretándolos, puede impugnarse la credibilidad de un testigo tanto con manifestaciones orales como escritas hechas por él con anterioridad al juicio. *Pueblo* v. *Lafontaine,* 43 D.P.R. 23, y casos en él citados; *Pueblo* v. *Méndez* (*a*) *Cocuyo,* 54 D.P.R. 23; *Pueblo* v. *Cruz,* 62 D.P.R. 831; *Pueblo* v. *Tirado,* ante, pág. 389. El error cometido por la corte es manifiesto y perjudicó los derechos del acusado. Él trató, infructuosamente y en distintas formas, de sentar las bases para impugnar la declaración del testigo principal del fiscal, Sabat Hernández, e informó a la corte ampliamente el fin que perseguía y la naturaleza de la prueba que intentaba presentar. No se rige, por tanto, el caso de autos por la doctrina de que el acusado no puede establecer su propia defensa contradiciendo a uno de sus propios testigos. *Pueblo* v. *Marchand Paz,* 53 D.P.R. 671, 679. Aquí, como hemos dicho, él trataba de contradecir al testigo cumbre del fiscal con el fin de destruir el efecto de su declaración en el juicio. Para ese fin la prueba era claramente admisible. El apelante sentó las bases y ofreció la prueba pertinente. ¿Qué más podía exigírsele para dar cumplimiento al artículo 159, supra?

Como este error, junto con el séptimo que se refiere a la resolución denegatoria de un nuevo juicio, conllevan la revocación de la sentencia y la concesión de un nuevo juicio, no es necesario considerar y resolver los demás errores señalados, ya que los mismos se refieren a la apreciación que de la prueba hizo la corte inferior.

*Deben revocarse la resolución denegando un nuevo juicio y la sentencia apelada y devolverse el caso para la celebración de un nuevo juicio.*

El Juez Asociado Sr. Negrón Fernández no intervino.