EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MANUEL RIEGO ZUÑIGA, acusado y apelante.

*Número:* CR–62–216    *Resuelto:* 4 de marzo ·de 1963

*Rafael Toro Cubergé,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Juan A. Faría, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

PER CURIAM: Manuel Riego Zuñiga fue acusado y convicto por una infracción al Art. VIII de la Ley de Vehículos y Tránsito de Puerto Rico, consistente en que en la noche del 21 de agosto de 1961 "conducía bajo los efectos de bebidas embriagantes", por la Calle Comercio de Mayagüez, un vehículo de motor marca Ford.   La Sala de Mayagüez del

Tribunal Superior le impuso una condena de treinta días de cárcel y la suspensión de la licencia de conductor por el término de un año.

En apelación el único error que señala es el siguiente:

"Erró el tribunal al condenar al acusado con prueba insuficiente y al no concederle el beneficio de la duda razonable."

Hemos analizado la transcripción de evidencia elevada en este recurso y de la misma se desprende que la prueba aportada por El Pueblo era suficiente para declararlo culpable del delito que se le imputó, más allá de cualquier duda razonable. Consistió en las declaraciones del policía Ramón Flores Pacheco, del Dr. Jaime Retegui, del químico Eugenio Rivera Lozada, y de Demetrio Mercado Arroyo.

De la declaración del policía Flores Pacheco se desprende que para allá para el 22 de agosto de 1961 se estaba arreglando una tubería que pasaba a lo largo de la Calle Comercio de Mayagüez; para evitar que el tránsito no discurriera por la parte en que se estaba haciendo el trabajo, se había colocado una barrera atravesando parte de dicha calle, formada por dos barriles de acero y un tablón sobre los mismos, a cuyos dos extremos se habían colocado dos linternas de las llamadas mechones o grillas para llamar la atención sobre la obra. A eso de las diez de la noche de ese día el acusado Riego Zuñiga mientras conducía su automóvil por esa calle se fue sobre la barrera tumbándola y tirando al suelo las dos grillas. Se llamó al Cuartel de la Policía por unos vecinos del sitio y se personó al lugar del accidente este policía, quien al llegar allí, encontró al acusado parado cerca de su vehículo el cual tenía el cristal del frente destrozado. El acusado aceptó que era el conductor del vehículo. Lo condujo al Cuartel de la Policía y desde allí al hospital, donde el Dr. Jaime Retegui le tomó una muestra de sangre. Según declaró el policía, el acusado despedía "olor a licor y se tambaleaba al andar." El químico Eugenio Rivera Lozada declaró que procedió a hacer el análisis químico de la muestra

de sangre para determinar el contenido de alcohol, resultando del análisis con un punto diez y siete (.17) y que luego, al hacerse posteriormente un análisis de comprobación, resultó un punto dieciséis (.16).

El testigo Demetrio Mercado Arroyo declaró que reside cerca del sitio donde ocurrió el accidente; que estando en el balcón de su casa sintió el impacto del automóvil sobre el tablón y cuando miró hacia allí pudo observar el tablón y las grillas o mechones en el suelo; vio el cristal roto del automóvil y al acusado que se había apeado del mismo; que por allí no vio a ninguna otra persona excepto el guardián de las luces que se acercó también al sitio del accidente; que no vio que en ningún momento el acusado se separara de aquel sitio; el que se encontraba allí cuando él lo vio y hasta que el policía llegó.

El acusado declaró en su defensa y su versión de lo ocurrido es algo rara. Relató que esa noche él venía en el automóvil acompañando a un señor llamado Antonio Sepúlveda (quien no prestó testimonio en el caso); que quien conducía el automóvil era Sepúlveda y no él; que cuando se rompió el cristal del frente, Sepúlveda fue a buscar una persona para ver si le colocaban un nuevo cristal a esa hora al automóvil; que mientras estaba Sepúlveda haciendo su diligencia, él se puso nervioso y que le dijo a un muchacho que estaba por allí cerca: "Vente, vamos a darnos un palo." Entonces se fueron a un cafetín y "nos dimos unos cuantos palos mientras llegaba el señor Sepúlveda"; que estuvo allí "dándose el palo" como unos veinte o veinticinco minutos; que luego llegó el policía, le preguntó qué había pasado y él le explicó lo ocurrido. Continuó diciendo: "Entonces me arrestó y me llevó al cuartel de la policía y después me llevó a sacarme la sangre. Como yo no me sentía borracho o tomado, digo, embriagado, me dejé sacar la sangre."

Esta historia, desde luego, no fue creída por el juez de instancia.

Si bien la declaración del policía en la parte relativa a las condiciones en que se encontraba el acusado no es una prueba muy robusta, el resultado del análisis químico y la presunción legal que la misma conlleva, que no ha sido impugnada en forma alguna, unido a lo que lógica y razonablemente puede inferirse del propio testimonio del acusado, es suficiente para la convicción del acusado.

*A juicio nuestro no se ha cometido el error señalado y debe confirmarse la sentencia apelada.*