EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ENRIQUE VÁZQUEZ LÓPEZ, acusado y apelante.

*Número:* CR-68-245     *Resuelto:* 28 de octubre de 1969

*Luis A. Archilla Laugier,* abogado del apelante. *J. F. Rodríguez Rivera, Procurador General Interino,* y *Elpidio Arcaya, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante fue convicto de conducir un automóvil estando bajo los efectos de bebidas embriagantes.

Se le suspendió la licencia de conductor por el término de un año y se le impuso una multa de $125.00. Señala que fue errónea la apreciación de la evidencia y que fue erróneo admitir en evidencia el parte de remisión que identificó la muestra de sangre.

■ El primer planteamiento no tiene mérito alguno. Véanse dos fragmentos de la prueba de cargo:

El testigo Juan González Torres declaró, refiriéndose al vehículo conducido por el apelante, que el día de los hechos:

"Yo estaba en el barrio Cerro Gordo, cerca de Dorado y cuando venía hacia Vega Baja por la carretera del barrio Ceiba Carmelita, kilómetro 3.4, mientras venía para Vega Baja veo un carro que viene dando zig-zag para encima de mí y yo al verlo así me alinié a mi derecha y vino y me dió por el guardalodo del carro mío, de mi derecha, y después de darme siguió hacia el otro lado y fue a parar en unos alambres que había." T.E. pág. 4.

El Sargento de la Policía Antonio Torres Rivera, quien fue a investigar el accidente declaró:

"Al requerirle [al acusado] la licencia de manejar y la del carro al señor acusado noté que se tambaleaba, tenía que aguantarse del carro para no caerse, estaba despeinado y le salía un fuerte olor a ron y al hablar no se entendía bien lo que decía . . . . T.E. pág. 12.

. . . . . . . .

El decía que él no estaba borracho nada, que él estaba bien, que él no iba a irse en la patrol, que yo me tenía que sacar la sangre junto con él." T.E. pág. 13.

Esa prueba, creída como lo fue, sostiene la convicción. El apelante alega que por el hecho de que el Sargento no recordara que un pasajero que acompañaba al apelante sufrió lesiones, su testimonio estaba en tal forma maculado y viciado que le hacía inmerecedor de crédito alguno por parte del tribunal. Habían transcurrido poco más de tres meses entre el día de los hechos y la vista del caso.

██ Eso no es correcto. Como se sabe, meras contradicciones sobre extremos no esenciales no son de por sí suficientes para que no deba darse crédito a un testigo. Tampoco lo es el hecho de que un testigo no recuerde exactamente todo lo que ocurrió, máxime si lo olvidado es sobre un aspecto irrelevante en relación con el delito por el cual se juzga al acusado.

Además de la prueba oral, que, como hemos señalado, fue suficiente para sostener la convicción, el resultado del análisis químico de la muestra de sangre fue de .16 por ciento de alcohol, lo cual de por sí solo es suficiente para sostener la convicción. 9 L.P.R.A. sec. 1041(b) (3); *Pueblo* v. *Riego Zuñiga*, 87 D.P.R. 584 (1963); *Pueblo* v. *Monroig Rodríguez*, 87 D.P.R. 655 (1963); *Pueblo* v. *Zalduondo Fontánez*, 89 D.P.R. 64 (1963).

El segundo señalamiento tampoco tiene mérito. Alega el apelante que el médico que supervisó la toma de la muestra de sangre nunca declaró que la había rotulado con el número de identificación que apareció en la misma y que por esa razón no debió haberse admitido en evidencia el parte de remisión que acompañó la muestra.

██ El testimonio del médico estableció que el parte de remisión que fue presentado en evidencia fue firmado por él; que recuerda cuando tomó la muestra de sangre a que se refiere el documento; que el parte de remisión corresponde al acusado; que después que se extrajo la muestra de sangre al acusado él (el médico) firmó el parte y lo envió al Departamento de Salud; que recuerda al acusado y lo de la muestra de sangre; que las muestras de sangre eran tres; que una se la entregó al acusado, y que las otras dos se enviaron al Departamento de Salud; que él fue quien llenó todo el parte de remisión; que tuvo bajo su custodia la muestra de sangre hasta que salió del Centro de Salud y él mismo la depositó en el correo. T.E. págs. 45–49. Más adelante el médico declaró que el parte de remisión que en el tribunal tuvo

ante sí fue el mismo que él envió al Departamento de Salud. T.E. pág. 55.

La admisibilidad del parte de remisión dependía de si éste era o no idèntificado propiamente y así se hizo. El médico declaró que dicho parte fue el que él firmó y el que él mismo envió al Departamento de Salud. Dicho parte de remisión fue identificado por el doctor, quien fue la persona que llenó los blancos, los firmó y los envió al Departamento de Salud.

Hemos creído conveniente discutir el segundo señalamiento aunque, como hemos señalado antes, la prueba oral de por sí sola, creída por el tribunal sentenciador, fue suficiente para sostener la convicción.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de Bayamón, en 10 de noviembre de 1967.*

El Juez Asociado Señor Hernández Matos no intervino.