EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* DA-NIEL DÍAZ RÍOS c/p LANGAY, acusado y apelante.

*Número:* CR-77-84    *Resuelto:* 25 de abril de 1978

*E. L. Belén Trujillo,* abogado del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: José Jiménez Padilla, chófer de taxi, salió de su hogar como a las 3:00 a.m. el sábado 21 septiembre, 1974, para iniciar su jornada de trabajo con la empresa a

que pertenecía. Su esposa no lo volvió a ver hasta dos días después, muerto, en el Instituto de Medicina Legal donde identificó el cadáver que había aparecido ya descompuesto en un lugar apartado de Cupey Alto, Río Piedras. Habían desaparecido su cartera y reloj. El taxi lo encontraron quemado en el vertedero de Caguas. El caso quedó en el misterio, hasta que pasado un año el cómplice José Manuel Torres Ramos informó a la Policía cómo el acusado y él habían detenido el taxi en San Juan dirigiéndolo al lugar escogido donde en determinado momento el acusado disparó contra el taxista.(1) Procesado por cargos de asesinato en primer grado e infracción de los Arts. 8 y 6 de la Ley de Armas, el jurado produjo veredictos de culpabilidad en los delitos graves, y el juez absolvió en el Art. 6.

En apelación se hace el siguiente señalamiento único:

"Cometió error el Hon. Tribunal sentenciador (jurado) al dirimir la prueba y darle crédito al testimonio del señor coautor don José Manuel Torres Ramos."

Después de examinados detenidamente tanto la exposición narrativa de la prueba como la transcripción del contrainterrogatorio del citado testigo Torres Ramos que consta de 125 páginas, no encontramos error alguno en el proceso.

Las contradicciones o equivocaciones secundarias en el testimonio del referido cómplice respecto a si el delito se cometió viernes 20 o sábado 21 de septiembre de 1974, a una u otra hora; si el lugar donde dejaron el cadáver es jurisdicción de Trujillo Alto o de Cupey, Río Piedras; si hubo o no conversación en el taxi ya encaminado al fin trágico de su chófer; y si el cadáver fue pasado sobre un muro o dejado junto a una baranda, son por simple definición detalles sin trascendencia que no afectaban la cuestión medular ante el jurado de que un hombre había sido muerto para robarle.

---

(1) El patólogo encontró cuatro heridas de bala, dos en el tórax que provocaron la hemorragia interna severa que terminó la vida.

Leves fueron dichas contradicciones si su autor y coautor del delito es persona de grandes limitaciones en su expresión, impuestas por su pobre formación cultural que terminó en el 7° grado de escuela elemental y por una adicción a marihuana que empezó a los 12 años, hallándose a la fecha del juicio a sus 19 años en proceso de rehabilitación en un hogar CREA; con una indiferencia de diletante sin preocupaciones, que se manifiesta en algunas de sus contestaciones.[2] El propio testigo excusa su ignorancia en el siguiente pasaje que tomamos de la T.E. pág. 65:

"P. Ahora le pregunto, por qué aquí le dijo al Fiscal, 'que luego me enteré que había quemado el taxi'; y por qué no le dijo, mire, Langay me dijo a mí que había quemado ese taxi, que él había quemado ese taxi al otro día por la mañana.

R. Las facilidades que me salió para decírselo fueron esas."

---

"[2]"DEFENSA:

"P. No conoce, no sabe cuáles son las horas del día ni tiene una idea de las horas en que vive.

"R. No señor.

"P. No conoce lo que es un minuto ni un segundo. No se ha interesado en aprender.

"R. No.

"P. Tampoco se ha interesado en aprender los días de la semana.

"R. No.

"P. Ni los días del mes.

"R. No.

"P. Ni se acuerda qué día es hoy.

"R. Jueves.

".         .         .         .         .         .

"P. ¿Usted no se acuerda de nada, de ningún día?

"R. Me acuerdo de algunos días.

"P. De algunos días. Dígame un día que usted se acuerde.

"R. El día que ingresé al Hogar Crea.

"P. ¿Qué día ingresó usted al Hogar Crea.

"R. Un domingo.

".         .         .         .         .         .

"P. ¿Tampoco sabe cuándo es que se celebra el descubrimiento de Puerto Rico?

"R. No señor.

"P. ¿Ah?

"R. No señor.

"P. Ni sabe cuándo se celebra la Independencia de los Estados Unidos?

"R. No señor." (T.E. págs. 118–120.)

En todo recurso de apelación la función de este Tribunal se cumple revisando el legajo de la sentencia guiado por los señalamientos de error o planteamientos de derecho del apelante hasta quedar satisfecho de que el acusado tuvo un juicio imparcial y objetivo. Hay que recordar que todo acusado tiene derecho a un juicio justo, que no significa necesariamente un juicio perfecto. Este Tribunal intervendrá con el veredicto del jurado o el fallo del juez de derecho únicamente cuando esté enervado por error que hiere derechos fundamentales de la persona y que en su proyección y consecuencia estremezca el sentido básico de justicia. El énfasis insistente en recursos técnicos de procedimiento criminal muy poco adelanta la causa si no plantea la vindicación de un derecho. El procedimiento ha adquirido una exuberancia que a veces nos oculta el tronco, el diseño fundamental de "juicio rápido y público" que en sencilla depuración de la prueba sirva tanto al derecho del ofensor como al de la sociedad agraviada. *Pueblo* v. *Arcelay Galán,* 102 D.P.R. 409 (1974). Ya antes dijimos: "Al cabo de tantos años de iluminantes desarrollos en nuestro sistema de enjuiciamiento vale preguntarnos en acuciosa exégesis: ¿Tendremos un curso procesal justo tanto para el Estado como el acusado, o una carrera de obstáculos todos los cuales han de ser salvados impecablemente antes de que siquiera pueda iniciarse el juicio con las más estrictas garantías de limpieza?" *Rabell* v. *Alcaides Cárceles de P.R.,* 104 D.P.R. 96, 100 (1975).

Fue correcta la estimación de la prueba por el jurado, y siendo ésta suficiente para establecer la comisión de los delitos imputados, no intervendremos con su apreciación. *Pueblo* v. *Vázquez López,* 98 D.P.R. 15–17 (1969); *Pueblo* v. *Rosario Cintrón,* 102 D.P.R. 82–84 (1974).

*Con estos antecedentes y fundamentos las sentencias de reclusión perpetua y de 2 a 4 años de presidio, concurrente*

*con la primera dictadas el 14 de abril de 1977 por la Sala de San Juan del Tribunal Superior, serán confirmadas.*

El Juez Asociado Señor Rigau no intervino.