El Pueblo de Puerto Rico, demandante y apelado, *v.* José Enrique Gelpí y Ramona Ortiz Oquendo, acusados y apelantes.

Núm. 8906.—*Sometido:* Noviembre 17, 1941. *Resuelto:* Diciembre 3, 1941.

*J. Ramírez Viñas,* abogado de los apelantes; *Hon. Procurador General
George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo*
y *Luis Negrón Fernández, Fiscal Auxiliar*, abogados de El Pue-
blo, apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tri-
bunal.

Los apelantes fueron acusados y convictos del delito de
tener establecida en Santurce una casa de lenocinio, en vio-
lación de las disposiciones del artículo 287 del Código Penal
vigente. Sentenciados al pago de una multa de $50 cada
uno o en su defecto a la prisión subsidiaria, interpusieron el
presente recurso, y para sostenerlo alegan: (*a*) que la evi-
dencia no es suficiente para constituir una infracción al
artículo 287 del Código Penal, y (*b*) que la corte inferior
erró al admitir prueba de referencia perjudicial al acusado.

 El precepto legal que se alega ha sido infringido, lee
así:

"Artículo 287.—Toda persona que estableciere o tuviere estable-
cida en Puerto Rico una casa de lenocinio, frecuentada para la pros-
titución y lascivia, o que voluntariamente residiere en ella, será reo
de *misdemeanor.*"

Hagamos un resumen de la prueba para que podamos
determinar si ella es suficiente para sostener la sentencia
recurrida.

El detective Alfredo Matos declaró: que en la noche del 29 de septiembre de 1940, él y los detectives Julio González y Angel Medina se personaron en la casa hospedaje de Enrique Gelpí, practicaron allí un registro y encontraron cuatro o cinco parejas de hombres y mujeres, cada pareja en una sola habitación; y los condujeron a todos al cuartel de la policía; que el acusado Gelpí no estaba en la casa en ese momento, pero la acusada Ramona Ortiz alegó que el negocio era de Gelpí y que ella lo representaba, por ser su esposa o querida; que los detectives tuvieron que esperar que los que estaban en las habitaciones se vistieran; que en una casa pequeña en el patio había una pareja en ropas menores, en la cama, acostados; que todo eso ocurrió como a las 9:30 de la noche; que las parejas que allí encontraron no eran marido y mujer; que las referidas parejas dijeron en presencia del acusado que ellos no eran marido y mujer, que llevaban relaciones ocultas y que iban a esa casa a tener un rato de placer; que una llamada Engracia dijo que ella frecuentaba ese sitio para realizar actos carnales; y que la acusada Ramona Ortiz no protestó de tales manifestaciones, hechas en su presencia.

Angel Medina, detective, corroboró lo declarado por su compañero Alfredo Matos y añadió: que cuando le preguntaron a la acusada Ramona Ortiz qué hacía aquella gente que habían encontrado allí, ella les dijo que esa gente pagaban 50 centavos por adelantado por estar allí un rato teniendo actos carnales; que al día siguiente vió a Gelpí y que éste le dijo que aquella casa era un hospedaje y que él se iba a defender en la corte; que es cierto que la acusada le dijo que el dueño de esa casa era el acusado Gelpí; que ellos habían recibido quejas con respecto a dicha casa y la habían observado; que al sorprender en las habitaciones a las personas en ropas menores, él les preguntó si eran casadas y dijeron que no, que ellos no vivían allí y que sólo venían a dicha casa a tener actos carnales y que la acusada les cobraba

por adelantado 50 centavos por usar la cama; que todas esas manifestaciones fueron hechas en presencia de la acusada Ramona Ortiz y que ésta no protestó.

Declarada sin lugar la moción para la absolución perentoria de los acusados, ocupó la silla testifical el acusado Gelpí, y declaró: que vive en el mismo edificio donde tiene establecido el negocio por el cual ha sido denunciado; que su negocio es de hotel, en el que cobra $1.25 diarios por casa y comida; que las comidas las proporciona la acusada; que tienen habitaciones "y cuando llega un matrimonio firma y mandamos el récord al cuartel y le preguntamos si es su esposa y dicen que sí"; que lleva 10 años ahí y nunca ha habido ningún desorden en su casa; que cuando llegaron esas parejas que fueron sorprendidas, él estaba en Mayagüez; que la costumbre establecida es cogerles el nombre y ellos mismos firman el libro; que él es el dueño de esa casa y la acusada es su representante.

Declaró la acusada Ramona Ortiz, y dijo: que el negocio es de hotel; que cuando llega un matrimonio se le toma el nombre y apellido; que ellos dicen siempre que son casados y toman un cuarto para toda la noche y pagan medio peso y los que se quedan a almorzar al otro día pagan $1.25.

La prueba es a nuestro juicio suficiente para sostener la acusación y la sentencia. Todos los hechos y circunstancias del caso tienden a probar que el llamado hospedaje establecido por el acusado Gelpí y administrado por su esposa o concubina Ramona Ortiz no era otra cosa sino una casa de lenocinio frecuentada para fines de prostitución y lascivia. Véanse: *Pueblo* v. *Zayas,* 26 D.P.R. 551, y *Pueblo* v. *Avilés,* 30 D.P.R. 841.

Las manifestaciones hechas por las personas que se encontraban en dicha casa, en el momento en que fueron sorprendidas y en presencia de la acusada Ortiz, sin que ésta las negara o impugnara en manera alguna, son admisibles en su contra y no erró la corte inferior al admitirlas. 16 C. J. 631, párr. 1256. Dichas manifestaciones eran también admi-

sibles contra el acusado Gelpí, como parte del *res gestæ,* especialmente si se tiene en cuenta que dicho acusado admitió expresamente en su declaración que él era el dueño de la alegada casa de lenocinio.

*La sentencia debe ser confirmada.*

El Juez Asociado Sr. Todd, Jr., no intervino.