EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANTO-
NIO BURGOS DÁVILA, acusado y apelante.

Número 15560.
*Sometido:* 1 de febrero de 1954. *Resuelto:* 10 de marzo de 1954.

*Guillermo S. Pierluisi,* abogado del apelante; *Hon. Secretario de Justicia José Trías Monge* y *Jaime García Blanco, Fiscal Especial, Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

Antonio Burgos Dávila fué juzgado y convicto por un jurado de los delitos de asesinato en segundo grado y atentado

a la vida, consistentes éstos en que allá en o por el día 31 de marzo de 1951 el referido acusado, quien para ese entonces era un miembro de la policía insular, dió muerte ilegal al ser humano Santiago Flores Quintero y posteriormente atacó con un revólver a Javier Jiménez González haciéndole disparos que le ocasionaron heridas graves. Contra las sentencias impuéstasle ha establecido el presente recurso de apelación.

 El primer error que el acusado-apelante le imputa al tribunal a quo se funda en una alegada omisión de parte del juez sentenciador al transmitir sus instrucciones al jurado "ya que no dió instrucciones respecto al homicidio excusable, artículo 207 del Código Penal de Puerto Rico, ni respecto al homicidio justificable, artículo 208, en relación con el artículo 211 del mismo cuerpo legal, existiendo, como existe, en el presente caso, no tan sólo la teoría de que el acusado actuó en el cumplimiento de sus deberes oficiales, sino prueba al efecto, sostenedora de dicha teoría, estando obligada la corte a dar instrucciones con respecto al homicidio justificable y excusable, de conformidad con los mencionados artículos del Código Penal."[1] El acusado alega ante nos que su defensa estaba predicada en (1) la defensa propia y (2) "en el hecho de que el acusado actuaba en su capacidad de funcionario público, poniendo el orden y practicando el arresto del interfecto en este caso, quien lo había agredido." Y sostiene que, como dicha teoría encuentra apoyo en la declaración del testigo de descargo Fermín Martínez, el tribunal debió dar instrucciones sobre ese extremo.

---

[1] Dichos artículos disponen lo siguiente:

"Artículo 207.—Cuándo Será Excusable el Homicidio. El homicidio podrá justificarse en los siguientes casos:

"1. Si se cometiere casualmente o por efecto de un accidente desgraciado, al corregirse legalmente a algún niño o sirviente, o al realizarse cualquier otro acto legal, por medios legales, con la acostumbrada y ordinaria precaución, y sin intención ilegal.

"2. Si se cometiere casualmente o por efecto de un accidente desgraciado, en un arrebato de cólera, motivada por súbita y suficiente provocación, o en improvisada riña, siempre que no se aprovechare de ninguna ventaja

En el reciente caso de *Pueblo* v. *Méndez*, 74 D.P.R. 913, enfatizamos la importancia de las instrucciones que el juez debe trasmitir al jurado. Las instrucciones, además de cubrir todos los elementos del delito envuelto, deben también cubrir, si la prueba lo justifica, los elementos de delitos inferiores al delito imputado o comprendidos dentro de éste. *Pueblo* v. *Fernández*, 49 D.P.R. 586; *Pueblo* v. *Nieves*, 57 D.P.R. 784; *Pueblo* v. *Rodríguez Dapena*, 35 D.P.R. 431. Asimismo deben cubrir las instrucciones, siempre que la prueba lo justifique, los elementos esenciales de las defensas levantadas por el acusado. *Pueblo* v. *Villanueva*, 49 D.P.R. 63. En sus instrucciones al jurado, el juez debe incluir todos los puntos de derecho que, bajo cualquier teoría razonable, puedan estar envueltos en las deliberaciones. Véase Fricke, *Instructing the Jury in Criminal Cases* y casos citados, CALJIC (California Jury Instructions Criminal), pág. XXXIX. Cualquier defensa ofrecida por el acusado y sostenida por alguna prueba pertinente que levante una cuestión de hechos que le sea favorable debe ser objeto de una instrucción que exponga ampliamente la ley aplicable a dicha cuestión. *Stevenson* v. *United States*, 162 U. S. 313; *Pueblo* v. *Galarza*, 71 D.P.R. 557; 41 C.J.S. 147, Sección 368; *Hale* v. *Commonwealth*, 183 S. E. 180; *Crockett* v. *Commonwealth*, 47 S. E.2d 377.

Aunque la prueba de defensa sea débil, inconsistente o de

---

indebida, ni se hiciere uso de ningún arma peligrosa, ni se verificare la muerte de una manera cruel e inusitada."

"Artículo 208.—Cuándo Será Justificable. Será justificable el homicidio cuando fuere cometido por funcionarios públicos y los que por orden de éstos estuvieren prestándoles su auxilio, en los casos siguientes:

"1. En cumplimiento de una sentencia de tribunal competente.

"2. Cuando hubiere necesidad de cometerlo para vencer cualquier resistencia que se opusiere a la ejecución de una orden judicial o en el cumplimiento de cualquiera de sus demás funciones legítimas.

"3. Cuando por necesidad se cometiere al efectuar la captura de criminales socorridos, o escapados, o al arrestar a reos de delito grave (*felony*) que se hallaren prófugos u ofrecieren resistencia al intentar su prisión."

"Artículo 211.—Absolución del Acusado. Si del proceso formado resultare justificable o excusable el homicidio, la persona acusada de haberlo cometido, deberá ser absuelta libremente."

dudosa credibilidad, el acusado tiene derecho a que su teoría sea presentada al jurado mediante instrucciones apropiadas. 26 Am. Jur. 513, Sección 515; *Pueblo* v. *Fernández*, supra; *Pueblo* v. *Calderón*, 50 D.P.R. 336.

Del examen que hemos hecho de la transcripción de la evidencia surge que hay prueba en el récord suficiente para que procediera una instrucción sobre homicidio justificable cometido por un funcionario público. En cuanto a este extremo, véase, Pearson, *The Right to Kill in Making Arrest*, 28 Mich. C. R. 957. Precisamente, fué ésta una de las teorías de la defensa.([2]) Ahora bien, no encontramos que las instrucciones que dió el tribunal a quo a ese respecto fuesen insuficientes. Para demostrar esta afirmación nos remitimos a la transcripción de evidencia. Veamos.

Según la declaración del testigo, policía Fermín Martínez Pérez, quien prestaba servicio esa noche junto al acusado, al pasar el interfecto Flores Quintero por el lado de ambos se expresó en forma desconsiderada y haciendo uso de lenguaje obsceno hacia la persona del acusado Burgos, quien entonces cogió a Flores Quintero por el hombro y le dijo que no hablara en esa forma. Flores golpeó entonces con sus puños al policía Burgos. Al ocurrir esto, según declaró el policía Martínez Pérez, ellos (tanto él como Burgos) trataron de arrestar a Flores al verle cometer un delito en su presencia, o sea, golpear a un funcionario público, cuyo arresto trataron de impedir los compañeros de Flores, entre los que se encontraba Javier Jiménez González, o sea, la víctima en el caso de atentado a la vida. Siguió declarando Martínez que vió cuando Jiménez metió las manos en el bolsillo de atrás del pantalón de Flores "y buscaba algo". Entonces, él (Martínez) se lanzó sobre Jiménez y lo retiró hacia atrás luego de lo cual se lanzó sobre otros dos que estaban a la espalda de Burgos para evitar que éstos lo agredieran. Mientras Martínez luchaba

---

([2]) La otra teoría fué la de defensa propia, la que fué objeto de amplias instrucciones y de las cuales no se queja el apelante.

con esos dos, Burgos y Flores, que aún luchaban entre sí, cayeron al suelo y entonces Jiménez "voló para encima de ellos". Sonaron varios disparos y cuando Martínez miró vió a los tres, Burgos, Quintero y Jiménez, en el suelo. "Ya estaba Flores herido—declara el testigo—y entonces ví a Burgos levantarse con la rodilla en el suelo y ví a Javier que salió para atrás y salió el segundo disparo." Javier Jiménez tenía en sus manos, según el testigo, un cuchillo con el cual hirió en el brazo a Burgos antes de éste hacerle los disparos.

Concedemos que esa prueba sostiene, aunque sea de manera dudosa, la teoría del acusado y que ameritaba, por tanto, una instrucción sobre la justificación del policía al matar a Flores mientras trataba de arrestarle, a lo cual Flores se resistía. Por supuesto, la instrucción en ese caso debe cubrir las circunstancias bajo las cuales el funcionario está justificado en recurrir a ese extremo de violencia. Esas circunstancias son, según se exponen en 13 Cal. Jur. 624, sección 33, las siguientes:

"...... un homicidio cometido por un funcionario [de orden público] no es justificable simplemente por su posición oficial. La regla general es que el homicidio es justificable cuando se comete por necesidad mientras se trata legalmente de arrestar a una persona que ha cometido un delito *felony*, ....... Un funcionario autorizado a hacer un arresto debe ejercer el menor grado de violencia posible, pero él puede hacer uso de aquella fuerza que él, como un hombre razonable, crea que es necesaria para vencer toda resistencia, aún hasta quitar la vida. Sin embargo, debe existir una necesidad, real o aparente, para justificar el que el funcionario recurra a esa medida extrema en beneficio de su propia seguridad y protección. Una resistencia que no amenace grave daño corporal puede y debe ser vencida sin recurrir al homicidio.

"Un funcionario no está justificado en matar a una persona para lograr un arresto en una acusación por un delito *misdemeanor*, pero al tratar de efectuar tal arresto, el funcionario puede resistir cualquier ataque que se le haga y, estando legalmente en ese sitio y no siendo considerado el agresor, puede quitar la vida en su propia defensa."

■■ Ahora bien, el alegado arresto que Burgos trató de verificar en la persona de Flores Quintero era, a lo sumo, un arresto por un delito *misdemeanor*, a saber, acometimiento y agresión grave al atacar a un funcionario del orden público. Tal intento de arrestar a Flores no podía, pues, justificar un homicidio a menos que fuera en defensa propia. *People* v. *Wilson*, 36 Cal. App. 589, 172 Pac. 1116. Y ya hemos dicho que las instrucciones fueron amplias en lo tocante a la defensa propia. Puede alegarse, sin embargo, y esa parece ser la posición del apelante, que la actuación del policía Burgos era necesaria para vencer la resistencia al arresto ejercida por Flores Quintero y sus compañeros. Bajo esta teoría el jurado podía concluir correctamente que el acusado no estuvo justificado en dar muerte a Flores ya que éste no usó arma alguna(³) y no se demostró que su resistencia amenazara grave daño corporal en la persona de dicho acusado. *People* v. *Bond*, 13 Cal. App. 175, 109 Pac. 150. Además, la prueba del Pueblo demostró que Flores Quintero había recibido varios macanazos del policía Burgos lo cual, quizás, indicaría que el interfecto pudo haber sido reducido a la obediencia sin necesidad de que el acusado recurriera al uso del revólver de reglamento.(⁴) *People* v. *Newsome*, 51 Cal. App. 42, 195 Pac. 938. En cuanto a Javier Jiménez, quien según la prueba de defensa, agredió al acusado con el cuchillo que quitó a Flores, el delito cometido contra él quizás hubiera estado justificado, de haber sido creída dicha prueba por el jurado, como cometido en defensa propia ya que no hay prueba alguna de que se tratara de arrestarle. De lo que sí hay prueba de descargo es de que Jiménez trató de impedir el alegado arresto de Flores y que para vencer esa resistencia de Jiménez se hizo nece-

---

(³) Según la prueba de descargo, Javier Jiménez González le quitó a Flores un cuchillo que éste tenía en el bolsillo de atrás de su pantalón.

(⁴) El médico que practicó la autopsia declaró sobre varias contusiones producidas, aparentemente, "por un instrumento cilindroide". Otros testigos oculares declararon que el acusado Burgos macaneó varias veces con su rotén al interfecto.

sario el hacer uso de la violencia. Sin embargo, cuando el policía Burgos recurrió al uso de la violencia contra Jiménez lo hizo mas bien en defensa propia al verse en peligro de sufrir grave daño corporal. Suponiendo que el alegado ataque con un cuchillo fué el delito grave que el acusado Burgos trató de evitar se cometiera, como se trataba de un acometimiento a su propia persona, no se requiere gran esfuerzo para concluir que Burgos actuó en su propia defensa. Pero aún asumiendo que, en verdad, Burgos trató de impedir la comisión de un delito *felony*, no encontramos omisión alguna en las instrucciones. Examinadas las mismas resolvemos que son suficientes. Como dijimos antes, ellas cubren con amplitud los principios legales sobre la defensa propia y además cubren la defensa de homicidio justificable cometido por un funcionario del orden público. Las partes pertinentes al efecto de dichas instrucciones, son las siguientes:

"Es un hecho probado que el acusado es un policía insular. En relación con la prueba de la defensa que alega que aparentemente él estaba practicando un arresto les informo a los Señores del Jurado que un arresto significa poner a una persona bajo custodia en los casos y del modo que la Ley lo permite. El arresto se hace mediante la restricción efectiva de la libertad de la persona arrestada, poniéndola bajo la custodia oficial de un funcionario y no debe disponerse de más restricción que aquellas necesarias para su arresto y detención.

"Un oficial de orden público—un policía—puede hacer un arresto en cumplimiento de una orden que le haya sido entregada con tal fin, o puede, sin una orden de arresto detener a una persona en los siguientes casos: —1) Por un delito público cometido o que se haya intentado cometer en su presencia; 2) Cuando en realidad se ha cometido un delito grave (*felony*) y él tiene motivos racionales para creer que la persona arrestada lo ha cometido; y 3) En virtud de denuncia fundada en motivos racionales, de la perpetración de un delito grave (*felony*) por la persona arrestada.

"Esto es, que un policía está facultado para arrestar a un ciudadano de día o de noche cuando haya cometido un delito público en su presencia—sea grave o misdemeanor—en su inmediata presencia; o cuando se ha cometido un delito grave y el

policía tiene motivos para creer que la persona arrestada lo ha cometido o en virtud de una denuncia fundada en motivos racionales. En cualquier otro caso el policía necesita una orden de arresto expedida por un funcionario competente.

"Se ha presentado prueba que tiende a demostrar el mal carácter del interfecto o de la supuesta víctima. Esta prueba no ha sido admitida en el sentido de que justifique, en modo alguno, la muerte por el acusado. Una persona no tiene más derecho a matar a un hombre malo que a un hombre bueno. Ambos tienen igual protección ante la ley. La muerte injustificada de cualquiera de ellos, de un hombre bueno o de un hombre malo, es igualmente un delito. La prueba del mal carácter debe ser considerada por el Jurado solamente como una circunstancia ilustrativa de los hechos y de la muerte y como indicativa de la agresión y la naturaleza de la agresión, ya que es más probable que un hombre de carácter violento y peligroso haga un ataque mortal, sin provocación alguna, que un hombre quieto y pacífico; y además se debe tener en cuenta cuando se alega la defensa propia para ayudarlos a resolver la controversia planteada ante ustedes de quién fué el que inició la contienda; o sea, quién fué el agresor inicial y resolver si el acusado actuó o no actuó en defensa propia.

"Portar un arma prohibida es un delito menos grave pero atacar a una persona con un cuchillo es un delito grave.

"Si ustedes entienden que una de las supuestas víctimas o alguien—ya que la prueba tiende a demostrar que uno de ellos proporcionó un cuchillo al otro—si ustedes entienden, repito, que uno de ellos, o ambos, tenían un cuchillo ustedes tienen derecho a inferir que el acusado podía arrestarlos allí si él vió que ellos tenían un cuchillo.

"Si ustedes entienden que uno o ambos o alguno de ellos tenía un cuchillo entonces estaban cometiendo un delito y el policía al arrestar a una persona en esas condiciones tiene derecho a ejercer aquel grado de violencia necesaria para reducir a la persona al arresto si se le opone.

"*Si ustedes entienden que el acusado mató a Santiago Flores Quintero e intentó matar a la otra persona para resistir o impedir que se realizara un delito grave en su inmediata presencia, deben ustedes considerar que el homicidio o atentado a la vida estaban justificados.*" (Bastardillas nuestras.)

El veredicto de culpabilidad rendido en ambos casos demuestra que el jurado no le dió crédito a la teoría y prueba

del acusado, sobre quién recae el deber de probar los elementos atenuantes que excusen o justifiquen el hecho de la muerte. *Pueblo* v. *Torres*, 75 D.P.R. 231. No siendo su veredicto contrario a la prueba ni a la ley aplicable al caso, no podemos alterar el mismo. El primer error no fué cometido.

Por el segundo señalamiento se queja el apelante de que el tribunal a quo erró "al no instruir a los caballeros del Jurado respecto a manifestaciones del Fiscal en su informe en el sentido de que 'si eso es lo que él había aprendido, a matar por la espalda a pesar de su espíritu de religiosidad', imputación ésta de naturaleza grave, injusta e impropia, hecha ante el Jurado, tendente a impresionarlo desfavorablemente en contra del acusado." El acusado presentó prueba de su buena reputación. Dicha prueba tendió a establecer, además, que el acusado es un hombre "religioso", que asiste a la iglesia con frecuencia. Por otro lado, la declaración del Dr. Antonio Stephens, quien practicó la autopsia de Flores Quintero, demostró que el cadáver presentaba tres heridas de bala, a saber, una que seguía una trayectoria de atrás hacia adelante partiendo desde la región escápulo-vertebral hacia el hipocondrio derecho y las otras dos en la nalga izquierda.

Surge del récord que la defensa protestó de las manifestaciones hechas por el fiscal en su informe al jurado al efecto de "que si a matar por la espalda fué lo que él [el acusado] aprendió a pesar de su espíritu de religiosidad . . . . ." Aparentemente al hacer tales manifestaciones el fiscal se había dirigido directamente al acusado. El juez preguntó entonces a la defensa si su protesta iba dirigida más bien a la forma en que el fiscal estaba actuando, a lo que contestó que sí. Como el taquígrafo no tomó todo el informe del fiscal al jurado no estamos en condiciones de determinar cuál era el argumento que en ese momento exponía el fiscal ni si las manifestaciones que se le atribuyen perjudicaron los derechos del acusado. *Pueblo* v. *Archeval*, 74 D.P.R. 512, 518. De todas maneras, como reseñamos antes, ya había prueba ante el

jurado sobre esos extremos y creemos que el comentario del fiscal, aunque fuese impropio, no es tan fatal, bajo los hechos de este caso y la naturaleza del comentario, como para producir la revocación de las sentencias. *Pueblo* v. *Ojeda*, 66 D.P.R. 419.

 Los señalamientos de error tercero y cuarto se dirigen a la actuación de la corte al admitir, sobre la objeción de la defensa, las declaraciones de dos testigos en cuanto a manifestaciones hechas por uno de los policías que acompañaban al acusado la noche de autos, cuyas manifestaciones fueron hechas después de ocurridos los hechos delictivos. La prueba de que se queja el acusado con relación al tercer error es la siguiente:

"P. ¿El Policía Burgos trató de volver al sitio de los hechos?
"R. Con revólver en mano.
"P. ¿Volvió?
"R. Dió como cuatro o cinco pasos hacía atrás.
"P. ¿Alguien intervino con él?
"R. El policía Vélez.
"P. ¿Qué dijo Vélez?
"R. Tú vas a matar esa gente, deja eso, vente. Trató de llevárselo.
"Lcdo. Pierluissi: Que se elimine eso porque son hechos ocurridos con posterioridad a los hechos y que tienden a impresionar indebidamente a los señores del jurado.
"Hon. Juez: Son hechos concomitantes.
"Lcdo. Pierluissi: Excepción."

En relación con el cuarto error, la prueba que se presentó es la siguiente:

"P. ¿Ud. iba a recoger a su hermano Javier?
"R. Si señor.
"P. ¿Lo pudo recoger?
"R. No señor, porque los guardias, cuando yo me doblé, dijeron: 'si lo recoges te entramos a tiros a tí.'
"P. ¿Quién?
"R. El guardia Vélez y éste.
"P. ¿Entonces qué pasó?

"R. Gritaron: deja que los llevan al hospital y ellos dijeron: 'deja que se mueran ahí.'

"Lcdo. Pierluissi: Que se eliminen los hechos que no tienen relevancia.

". . . . . . . .

"Hon. Juez: Son hechos coetáneos. Se trata del acusado y el acusado dice: 'deja que se mueran ahí'.

"Lcdo. Pierluissi: Excepción.

"Hon. Juez: ¿Quién dijo eso?

"R. Vélez y Burgos.

"P. ¿Eso de 'que se mueran ahí' lo dijo Vélez y Burgos?

"R. Si señor.

"P. ¿Qué Burgos?

"R. El acusado.

"P. ¿Y Vélez?

"R. El guardia que estaba allí.

"Lcdo. Pierluissi: Oposición.

"Hon. Juez: Sin lugar.

"Lcdo. Pierluissi: Excepción."

El argumento del apelante es al efecto de que dicha prueba fué ofrecida con el solo propósito de impresionar indebidamente al jurado y que la misma, por ser "representativa de actos posteriores a los hechos, carecía de materialidad y no debió haber sido admitida."

Específicamente, en el caso de autos, las manifestaciones del acusado Burgos que son objeto del señalamiento de error eran admisibles para demostrar la intención y motivo del acusado al dispararle a Javier Jiménez González, su víctima en el caso de atentado a la vida. De acuerdo con la prueba del Pueblo, que fué la creída por el jurado, Burgos le disparó a Jiménez cuando éste se fué a doblar para recoger del suelo a Flores Quintero con ideas de llevarlo al hospital. Indudablemente, la intención del acusado Burgos era evitar que llevaran el interfecto al hospital y para lograr su intención o designio disparó e hirió a Jiménez. Sus manifestaciones eran admisibles, pues, para probar esa intención, motivo o designio.

Además, la acusación y la prueba del fiscal iban dirigidas a demostrar un asesinato en segundo grado. Para

ello, el fiscal podía demostrar circunstancias que demostraran la existencia en el acusado de un corazón pervertido y maligno. *Pueblo* v. *Rodríguez*, 34 D.P.R. 464, 467; *Pueblo* v. *Belardo*, 50 D.P.R. 512; *Pueblo* v. *Torres*, 75 D.P.R. 231; 13 Cal. Jur. 603, sección 18. Para tal fin sus indicadas manifestaciones eran relevantes y por tanto, admisibles en evidencia.

Creemos, asimismo, que las manifestaciones del policía Vélez, tendían también a probar ese elemento del delito. Vélez fué un testigo ocular de los hechos y pudo apreciar el estado de ánimo del acusado en ese momento. Como resultado de su apreciación fué que aconsejó al acusado "tú vas a matar a esa gente, deja eso, vente." No es necesario que discutamos si la declaración del testigo Gautier en relación con esas manifestaciones de Vélez debieron excluirse por ser prueba de referencia, pues la objeción de la defensa fué al efecto de que eran irrelevantes. Sin embargo, su relevancia para demostrar que el acusado Burgos, por su estado de ánimo y manera de comportarse, poseía allí y entonces un corazón maligno y pervertido—elemento importante del delito imputado—es palpable. Pero aun cuando resolviéramos que fué error el admitir las manifestaciones de Vélez, ello no sería un error que diera lugar a la revocación. Las manifestaciones del acusado Burgos al mismo efecto ya habían llegado al jurado y las otras manifestaciones de Vélez muy poco podían añadir como para que el jurado se impresionara indebidamente. Estas manifestaciones eran además admisibles como parte del *res gestae*. Véase *Pueblo* v. *Gelpí*, 59 D.P.R. 556; *Pueblo* v. *Rosa*, 37 D.P.R. 428; *Pueblo* v. *Flores*, 17 D.P.R. 178; VI Wigmore *On Evidence*, (tercera edición) págs. 177 y siguientes.

*No habiéndose cometido ninguno de los errores señalados, las sentencias apeladas serán confirmadas.*