EL PUEBLO DE PUERTO RICO, apelado, *v.* JOSÉ A. PINTOS LUGO, acusado y apelante.

*Número:* CR-88-75        *Resuelto:* 10 de noviembre de 1992

*Víctor M. Agrait Defilló*, abogado del apelante; *Jorge E. Pérez Díaz, Procurador General, Norma Cotti Cruz, Subprocuradora General*, y *Eunice Amaro Garay, Procuradora General Auxiliar*, abogados de El Pueblo.

## SENTENCIA

El apelante fue convicto por un jurado por el delito de apropiación ilegal agravada y sentenciado a diez (10) años de reclusión. El tribunal de instancia le concedió el beneficio de sentencia suspendida. Inconforme, apela ante nos aduciendo cinco (5) señalamientos de error.[1]

### I

Los hechos según acordados por las partes en la exposición narrativa de la prueba se exponen a continuación.

El 30 de julio de 1986 la testigo Raquel Rodríguez Díaz trabajaba como pagadora de la Cámara de Representantes. La señora Rodríguez le entregó al Sr. Rafael Rivera el cheque núm. 010477, por $360, a favor del Sr. Héctor González Onez[2] por concepto de dietas. El señor Rivera trabajaba como mensajero de la Cámara de Representantes y entregó

---

[1] El apelante en su alegato desistió de discutir los errores numerados en su apelación como segundo y tercero, por lo que no venimos obligados a considerarlos. *Pueblo v. Torres Rivera*, 129 D.P.R. 331, 334 esc. 4 (1992).

[2] Surge del testimonio de Raquel Rodríguez Díaz, reseñado en la Exposición Narrativa de la Prueba, que el cheque núm. 010477 estaba girado a nombre de Héctor González Onez. Creemos que esto constituye un error clerical. Surge de la Minuta de 28 de marzo de 1988 que durante el directo de la testigo Raquel Rodríguez se ofreció como identificación el cheque núm. 010477 a nombre de Héctor González Cruz. Además del testimonio de los otros testigos reseñados en la Exposición Narrativa de la Prueba, surge que en todo momento se refieren al señor González como Héctor González Cruz.

el cheque a la Sra. Miriam Arroyo Espada. La señora Arroyo se desempeñaba como oficinista del Representante Concepción Báez. Esta testigo manifestó que recibió el cheque núm. 010477 del señor Rivera Ruiz y se lo entregó al acusado ya que la secretaria del señor González no se encontraba. La señora Arroyo indicó que el cheque no tenía nada escrito al dorso y que ella no anotó nada en el mismo. Identificó al acusado como la persona a quien entregó el cheque.

El acusado José A. Pintos Lugo trabajaba para el mes de julio de 1986 con el Representante Héctor González Cruz en la Comisión de Veteranos. No surge con claridad de los autos las funciones que realizaba en dicho empleo.

La Sra. Carmen S. Meléndez Andino declaró que para el 31 de julio de 1988 era "teller" en la Cooperativa Ahorro y Crédito de la Policía de Puerto Rico. Que ese día el acusado (a quien identificó en el juicio) se presentó a realizar una serie de transacciones. Señaló que el acusado depositó varios cheques en la cuenta de ahorros del Sr. Héctor González Cruz y cambió el cheque de $360 numerado 010477 de 30 de julio de 1986 y girado a favor de Héctor González Cruz. En el contrainterrogatorio la señora Meléndez señaló que no recordaba cuantos cheques se habían depositado, pero sí recordaba que uno de los cheques depositados era de $166. Ella recordaba esa transacción y al acusado por la regularidad con que le hacía depósitos al señor González Cruz. Declaró también que por lo regular la transacción incluía cambiar un cheque de $360, depositar otro de $166 y que el acusado hacía estas transacciones con frecuencia.

Por último, testificó el Sr. Héctor González Cruz. Surge de las minutas del Tribunal Superior, Sala de San Juan, de 28 y 29 de marzo de 1988, que consta en autos, que hubo que retirar al Jurado para hacer una determinación de admisibilidad del testimonio de este testigo. Esto con motivo de que dicho testimonio contenía unas admisiones hechas por el acusado a este testigo. Las partes, luego de escuchar

el testimonio de este testigo, argumentaron ampliamente para determinar si el testimonio debía presentarse al Jurado. Inicialmente el tribunal determinó que no iba a permitir que pasara la admisión al Jurado porque existía un documento firmado por el Ministerio Público y la defensa de que no habían admisiones de las partes. Sin embargo, en la sesión de la tarde de 29 de marzo de 1988, el Ministerio Público solicitó reconsideración de la determinación previa del tribunal y éste accedió a su solicitud. Luego de oir nuevamente a las partes, el tribunal señaló que la admisión no ocasionaba sorpresa a la defensa ya que ellos tenían copia de la declaración jurada del señor González Cruz, por lo que permitió al testigo declarar, con la objeción de la defensa.

El testigo González Cruz manifestó que para julio de 1986, el acusado trabajaba con él. Para el 22 de julio de 1986 salió de Puerto Rico y regresó de sus vacaciones el 3 o el 4 de agosto de 1986. En relación con el cheque núm. 010477 señaló que no lo endosó y que nunca recibió el cheque referido ni su importe. Según surge de la exposición narrativa de la prueba, a los pocos días de regresar de su viaje, el acusado le visitó en su residencia y le indicó que había tenido necesidad de un dinero de emergencia y había utilizado los $360 que correspondían al cheque. En ese momento el acusado le indicó que por tal motivo le entregaba $180 —cantidad que aceptó— y el resto lo había pagado en la mensualidad de un préstamo del Representante Concepción Báez, por lo que todo quedaba pago. En el contrainterrogatorio señaló que el acusado había recogido el cheque en la división de finanzas y había firmado el recibo de los cheques. Reiteró haber aceptado los $180 que le entregó el acusado y que vio el recibo de pago de la mensualidad del préstamo. Por último, señaló que había presentado el caso porque el acusado todavía le debía algún dinero. Por estos hechos, el apelante fue acusado de los delitos de apropiación ilegal agravada y el de posesión y traspaso de docu-

mentos falsificados. Se le encontró culpable por un jurado de apropiación ilegal agravada y fue absuelto del otro delito por tribunal de derecho.

## II

Se alega, en primer lugar, que el tribunal de instancia erró al admitir prueba sobre una admisión del acusado, cuando el Fiscal había señalado que no existía prueba de admisiones y/o confesiones del acusado. El apelante argumenta en su alegato que la prueba del Pueblo fue sorpresiva ya que el propio Ministerio Fiscal había indicado por escrito que no existían admisiones y/o confesiones del acusado, y que dicha prueba requería una alteración sustancial de la estrategia de la defensa en una etapa avanzada del juicio. El Ministerio Público por otro lado nos indica que la evidencia a la cual se refiere el apelante formaba parte del testimonio contenido en la declaración jurada prestada por el testigo González Cruz y que la defensa poseía desde la vista preliminar, ya que el testimonio del señor González formó parte de la evidencia desfilada en dicha vista.

Este error no fue cometido. Surge de la Minuta de 29 de marzo de 1988, que forma parte de los autos del caso, que cuando surgió la controversia sobre si se permitía o no llevar a conocimiento del Jurado la admisión del acusado que surgía del testimonio del testigo González Cruz, el tribunal de instancia determinó que dicho testimonio no era sorpresivo para la defensa ya que ésta poseía la declaración jurada del testigo González —de la cual surgía claramente la admisión— por lo que debía tener conocimiento de su contenido. Ante estas circunstancias estamos convencidos de que el acusado no sufrió un perjuicio sustancial que amerite revocación. Los casos *Pueblo v. Medina Walker*, 90 D.P.R. 650 (1964); *Pueblo v. Díaz*, 61 D.P.R. 696 (1943), y *El Pueblo v. Ramos*, 28 D.P.R. 800 (1920), presentan situa-

ciones análogas en que rechazamos el argumento de que el acusado fue sorprendido o perjudicado por la prueba del Fiscal. En estos casos el acusado tenía conocimiento previo de la información alegadamente sorpresiva por lo que rechazamos este argumento.

No habiéndose cometido este error, la declaración del acusado era claramente admisible en el juicio de acuerdo con la Regla 62 de Evidencia de 1979 (32 L.P.R.A. Ap. IV), como excepción a la regla de prueba de referencia por ser una declaración ofrecida contra una parte en el pleito.

## III

Se señala como segundo error[3] la negativa del tribunal de instancia a impartir instrucciones sobre la modalidad menos grave del delito de apropiación ilegal. Este error no fue cometido. El Art. 165 del Código Penal, 33 L.P.R.A. sec. 4271, va dirigido a castigar a toda persona que sin violencia ni intimidación se *apropiare* de bienes muebles pertenecientes a otra persona. Por otro lado, el Art. 7 del Código Penal, 33 L.P.R.A. sec. 3022, define lo que constituye "apropiarse" como "el malversar, defraudar, ejercer control ilegal, usar, sustraer, apoderarse, o en cualquier forma hacer propio cualquier bien o cosa en forma *temporal* o *permanente*". (Énfasis suplido.) Por último, el Art. 166 del Código Penal, 33 L.P.R.A. sec. 4272(b), señala que si el bien mueble apropiado excede de la suma de $200 se incurrirá en una de las modalidades de carácter grave del delito de apropiación ilegal.

El apelante fundamenta este señalamiento de error a base de que de la prueba de cargo surge que él utilizó $180 del total de $360 para pagar una mensualidad de un préstamo que tenía el señor González. Por tal motivo, de haber incurrido en el delito imputado sólo pudo haberse apro-

---

[3] Véase esc. núm. 1.

piado de $180, por lo que no se configuró la modalidad grave imputada.

El problema con este argumento es que ignora la manifestación que hizo el acusado al testigo González Cruz de que "había tenido una necesidad de dinero de emergencia" y había utilizado los $360 que correspondían al cheque. Alegato, pág. 2. Esta manifestación, según determinamos al principio de esta sentencia, era admisible como excepción a la regla de prueba de referencia por ser una admisión de parte. Regla 62 de Evidencia de 1979, *supra*.

Aunque el testimonio del señor González presenta contradicciones, las mismas no son de tal carácter que impidan la utilización de su testimonio. En *Pueblo v. Rodríguez Román*, 128 D.P.R. 121 (1991), dijimos que las contradicciones sólo ponen en juego la credibilidad de un testigo y le toca al juzgador de los hechos resolver a quien cree. La máxima "falsus in uno, falsus in omnibus" no autoriza a rechazar toda la declaración de un testigo porque se haya contradicho. Es imprescindible armonizar toda la prueba y analizarla en conjunto. En este caso, el Jurado como juzgador de los hechos dirimió el conflicto de credibilidad y resolvió en contra del apelante. En ausencia de pasión, prejuicio y parcialidad no alteraremos esa determinación. *Pueblo v. Rodríguez Román*, supra; *Valencia, Ex parte*, 116 D.P.R. 909 (1986); *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172 (1985); *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721 (1984).

En vista de que la prueba desfilada demostró que hubo uso ilegal de un bien mueble (el dinero del cheque por valor de $360) para beneficio del apelante, esto indica la intención específica de apropiarse del dinero aunque fuese temporeramente, por lo que se configuró el delito de apropiación ilegal agravada. La intención de privar al dueño del bien mueble puede inferirse de las circunstancias relacionadas con la comisión del delito y con la conducta del imputado. *Pueblo v. Flores Betancourt*, 124 D.P.R. 867

(1989). Surge claramente del texto de la ley que la apropiación que penaliza el Código Penal puede ocurrir en dos (2) modalidades: temporal o permanentemente. Ante esta situación, no procedían las instrucciones solicitadas por el apelante. Hemos resuelto reiteradamente que instrucciones sobre un delito menor sólo proceden cuando la prueba así lo justifica. Véanse: *Pueblo v. Maysonet Arroyo*, 98 D.P.R. 60 (1969); *Pueblo v. Gagot Mangual*, 96 D.P.R. 625 (1968); *Pueblo v. Tufiño Cruz*, 96 D.P.R. 225 (1968), y *Pueblo v. Burgos*, 76 D.P.R. 199 (1954).

## IV

El último error alegado es que el tribunal de instancia erró al declarar al acusado convicto por apropiación ilegal agravada porque dicho delito no se probó más allá de duda razonable.

El argumento del apelante a este respecto va dirigido a señalar que habiéndose entregado la suma total a los "pocos días" de regresar el señor González Cruz, no hubo privación de propiedad, por lo que no se configuró este elemento del delito.

Este señalamiento carece de mérito. Es que en *Pueblo v. Uriel Álvarez*, 112 D.P.R. 312 (1982), señalamos que para que se configure el delito de apropiación ilegal es elemento indispensable que el imputado se apropie o advenga en posesión ilegal de bienes muebles pertenecientes a otra persona. En este caso hubo privación de propiedad. La privación del importe del cheque, como señalamos al principio de esta sentencia, no tenía que ser permanente, podía ser temporal. 33 L.P.R.A. sec. 3022. El hecho de haber devuelto el dinero ultilizado "a los pocos días" de regresar el señor González no impedía que se configurase la privación. No fue la retención del dinero, ante la imposibilidad de no poderlo entregar inmediatamente, lo que constituyó la apropiación. Lo que constituyó la apropiación fue el uso

ilegal del dinero durante la ausencia de su legítimo dueño. Como señaláramos en *Pueblo v. Uriel Álvarez,* supra, lo que persigue el estatuto es la protección del patrimonio ajeno. Por lo tanto, establecido que estaban presentes todos los elementos del delito, no se cometió este error. Reiteradamente hemos señalado que la culpabilidad de un acusado no tiene que establecerse con certeza matemática, sino que basta la evidencia que establece certeza moral, que convence y satisface la razón. *Pueblo v. Bigio Pastrana,* 116 D.P.R. 748 (1985); *Pueblo v. Díaz,* 107 D.P.R. 140 (1978). La evidencia presentada aquí fue suficiente para concluir que el apelante cometió el delito por el cual fue convicto.

Por los fundamentos antes expresados, los cuales se hacen formar parte de esta sentencia, *se confirma la sentencia del Tribunal Superior, Sala de San Juan, de 29 de julio de 1988.*

Lo pronunció y manda el Tribunal, y certifica la señora Subsecretaria General. La Juez Asociada Señora Naveira de Rodón disintió con una opinión escrita, a la cual se unieron los Jueces Asociados Señores Rebollo López y Hernández Denton.

*(Fdo.)* Carmen E. Cruz Rivera
*Subsecretaria General*

— O —

Opinión disidente emitida por la Juez Asociada Señora Naveira de Rodón, a la cual se unen los Jueces Asociados Señores Rebollo López y Hernández Denton.

A medida que la economía ha ido empeorando, hemos observado una peligrosa e inquietante tendencia hacia la utilización del proceso criminal como mecanismo de coacción y cobro en situaciones cuya naturaleza es primordialmente civil. Hoy nuevamente tenemos ante nosotros una

de éstas. Se ha pretendido usar el procedimiento criminal para el cobro de una deuda ordinaria.([1]) Por considerar que este tipo de situación es no sólo contraria a lo establecido por el ordenamiento jurídico, sino nociva al mismo, no podemos suscribir la sentencia que hoy emite la mayoría.

De un examen de los hechos, a la luz de la exposición narrativa de la prueba, la prueba documental y los autos originales, surge con meridiana claridad que no se configuró el delito de apropiación ilegal agravada. Veamos.

# I

*Exposición de hechos*

El aquí apelante fue acusado de dos (2) delitos: el de apropiación ilegal agravada y el de posesión y traspaso de documentos falsificados, infracciones correspondientes a los Arts. 166(b) y 272 del Código Penal, 33 L.P.R.A. secs. 4272(b) y 4592. La prueba de cargo consistió fundamentalmente en el testimonio de cinco (5) testigos. Tres (3) de los testigos, a la fecha de los hechos, se desempeñaban como empleados de la Cámara de Representantes de Puerto

---

([1]) Nos resulta increíble que este caso lo llevara la División para Combatir la Corrupción Gubernamental del Departamento de Justicia. Esta división comenzó a funcionar en marzo de 1985 y tiene, entre otros, el propósito de combatir la corrupción mediante la investigación y el procesamiento de funcionarios públicos que en el desempeño de su cargo incurran en conducta delictiva. Informe de la Labor Realizada (1985–1988) del Departamento de Justicia, pág. 144.

*Los delitos que se investigan en esta División son principalmente aquellos contra el erario, la función pública y otros relacionados.* La función de los fiscales adscritos a esta división es investigar las querellas recibidas y procesar aquellos casos donde exista prueba más allá de duda razonable. Sin embargo, en los casos en que no se configura delito alguno, el Fiscal tiene el deber de hacer las recomendaciones pertinentes en el área civil y/o administrativa. (Énfasis suplido.) Documento interno del Departamento de Justicia, Capítulo I "La División para Combatir la Corrupción Gubernamental", preparado por los fiscales Delia I. Cabán Dávila, Mayra E. López Mulero y Valentín López Llamas, págs. 5, 6, 8.

Nos parece que los hechos de este caso, en el cual no se configuró delito alguno, no quedan enmarcados dentro del propósito que movió a que se creara esta división. Aún más, debido a los limitados recursos fiscales para combatir la corrupción gubernamental, la acusación presentada en este caso desvirtúa el propósito para el cual fue creada la referida división y mal utiliza los escasos recursos que tiene disponible.

Rico. Los otros dos (2) testigos fueron la cajera ("teller") que cambió el cheque en cuestión y el supuesto perjudicado. Consideremos estos testimonios.

La Sra. Raquel Rodríguez, Oficial Pagador de la Cámara de Representantes, declaró que el 30 de julio de 1986 expidió el cheque núm. 010477, por concepto de dietas, por la suma de $360 a favor del Representante a la Cámara Héctor González Cruz, y que ese día le entregó este cheque al señor Rafael Rivera Ruiz. A su vez, el señor Rivera Ruiz declaró que trabajaba como mensajero de la Cámara de Representantes y que entregó el cheque a la Sra. Miriam Arroyo Espada, oficinista del Representante Concepción Báez. La señora Arroyo Espada atestiguó que recibió el cheque, firmó el correspondiente recibo y lo entregó al acusado, aquí apelante, debido a que la secretaria del Representante González Cruz no se encontraba.

El testimonio de la Sra. Carmen Sonia Meléndez Andino, cajera en la Cooperativa de Ahorro y Crédito de la Policía de Puerto Rico (Cooperativa), es sumamente importante. Esta atestó que el 31 de julio de 1986 el acusado acudió a la Cooperativa a realizar una serie de transacciones. También dijo que éste depositó varios cheques en la cuenta de ahorros del Representante González Cruz y cambió el cheque núm. 010477 por la suma de $360 girado a favor del Representante González Cruz, quien para ese entonces era jefe del apelante. Durante el contrainterrogatorio, la testigo Meléndez Andino no pudo recordar cuántos cheques habían sido depositados, pero sí recordaba que uno de los cheques depositados era de $166. Indicó recordar esa transacción y al acusado porque, según ella, por lo regular éste le hacía depósitos a su jefe. "Declaró tambi[é]n que *por lo regular* la transacción envolvía cambiar un cheque de $360.00 y depositar un cheque de $166.00. El Sr. José Pinto Lugo *con frecuencia* realizaba esa transacción para el Sr. González Cruz." (Énfasis suplido.) E.N.P., pág. 2.

La Fiscalía trajo como último testigo al supuesto perjudicado Héctor González Cruz, quien se desempeñaba como Representante a la Cámara.(²) Este declaró que para julio de 1986 el acusado apelante trabajaba con él en la Comisión de Asuntos de Veteranos. Por motivo de sus vacaciones, dijo que salió de Puerto Rico el 22 de julio de 1986 y regresó el 3 ó 4 de agosto de ese mismo año. Con respecto al cheque núm. 010477 por la suma de $360, indicó que no lo endosó, que nunca recibió ese cheque ni su importe. Continuó atestiguando que el acusado lo visitó en su residencia "y le indicó que hab[í]an tenido necesidad de un dinero de emergencia y había utilizado los $360.00 que correspond[í]an al cheque". E.N.P., pág. 3. Expresó haber aceptado los $180 en efectivo que le entregó el acusado, quien también le dijo que había pagado la mensualidad de un préstamo del Representante "por lo que todo 'quedaba pago' ".

Durante el contrainterrogatorio, el testigo González Cruz reiteró que el acusado apelante "le había entregado $180.00 en efectivo y *le mostró un recibo de haber pagado una mensualidad de una cuenta* del Sr. González Cruz y le indic[ó] que 'todo quedaba pago'[.] Señaló por último que había radicado el caso [porque] el acusado todavía le debía algún dinero". E.N.P., pág. 3.

Mediante votación 9-3 en ambos cargos, un jurado encontró al acusado culpable de los dos (2) delitos que se le imputaban. No obstante, el tribunal lo absolvió del cargo de posesión y traspaso de documentos falsificados al declarar con lugar una moción de absolución perentoria.

El apelante Pintos Lugo señala como error, entre otros,

---

(²) El testimonio del testigo González Cruz contenía unas supuestas admisiones hechas por el acusado al testigo. Debido a que existía un documento ("Informe sobre reunión") firmado por el Fiscal y la defensa en el cual el Fiscal informó que no existía prueba sobre admisiones o confesiones del acusado, originalmente el tribunal no permitió que esta admisión pasara al Jurado. Sin embargo, luego reconsideró y permitió al testigo declarar en presencia del Jurado, siempre con la objeción de la defensa.

que el tribunal de instancia lo declaró culpable del delito de apropiación ilegal agravada porque dicho delito no se probó más allá de duda razonable. Entendemos que le asiste la razón. Aplicando el criterio constitucional de duda razonable al caso ante nos, encontramos que la evidencia creída por el juzgador de los hechos (el Jurado) es insuficiente en derecho para establecer la culpabilidad del acusado más allá de duda razonable.

## II

Conforme al Art. 165 del Código Penal, 33 L.P.R.A. sec. 4271, el delito de apropiación ilegal consiste en apropiarse ilegalmente de un bien mueble ajeno sin violencia ni intimidación.

> Toda persona que ilegalmente se apropiare sin violencia ni intimidación de bienes muebles, pertenecientes a otra persona, será sancionada con pena de reclusión por un término que no excederá de seis meses, multa que no excederá de quinientos (500) dólares, pena de restitución, o cualquier combinación de éstas, a discreción del tribunal. 30 L.P.R.A. sec. 4271.

Como actos de apropiación se contemplan todas las formas clásicas de desposesión. Véanse: Art. 7(5) del Código Penal, 30 L.P.R.A. sec. 3022(5); *Pueblo v. Uriel Álvarez*, 112 D.P.R. 312, 317 (1982). La apropiación ilegal se considera delito grave si el valor de los bienes apropiados excede de $200. Art. 166(b) del Código Penal, *supra*.

El elemento mental que se requiere para configurar el delito de apropiación ilegal es la intención específica de apropiarse de los bienes ajenos. *Pueblo v. Miranda Ortiz*, 117 D.P.R. 188 (1986), y casos allí citados. "La intención criminal es una condición subjetiva y, como tal, sólo puede descubrirse su existencia por las circunstancias que concurren en el hecho delictivo. *Pueblo v. De León*, 102 D.P.R. 446 (1974); *Pueblo v. Tribl. de Distrito y Colón, Int.*, 74

D.P.R. 838 (1953); *Pueblo v. Santiago*, 54 D.P.R. 167 (1939)." Íd., pág. 194.

El Art. 14 del Código Penal, 33 L.P.R.A. sec. 3061, establece que nadie podrá ser sancionado por una acción penalizada por ley si la misma no se realiza con intención o negligencia criminal. El segundo párrafo del Art. 14, *supra*, aclara que la intención o negligencia criminal se manifiestan por las circunstancias relacionadas con el delito, la capacidad mental de la persona y, por último, las manifestaciones y conducta de la persona.

Tal como ocurrió en *Pueblo v. Miranda Ortiz*, supra, la situación de hechos en este caso revela una ausencia total de intención criminal. Conforme a la exigencia del Art. 14 del Código Penal, *supra*, procede que discutamos las circunstancias relacionadas con el delito imputado así como también las manifestaciones y conducta del apelante.[3]

A. *Circunstancias relacionadas*

La prueba desfilada por el Ministerio Público demuestra en detalle el curso del cheque en cuestión desde que éste fue expedido por la Oficial Pagador hasta que llegó a las manos del apelante. La oficinista de la Cámara de Representantes —Miriam Arroyo Espada— testificó que fue ella quien hizo entrega del cheque al señor Pintos Lugo. El cheque fue entregado al apelante porque éste estaba autorizado a recibir los cheques de su jefe, el Representante a la Cámara Héctor González Cruz.

Surge con claridad de la exposición narrativa de la prueba que el apelante no obtuvo el cheque ilegalmente. No medió fraude, ni tampoco el apelante se apoderó del cheque subrepticiamente. La prueba de cargo demostró todo lo contrario a lo que el señor González Cruz le había indicado originalmente al Fiscal investigador, esto es, que

---

[3] No se discutirá la capacidad mental del apelante debido a que no ha sido levantada su inimputabilidad. Prevalece, pues, la presunción de que el acusado cuenta con la capacidad suficiente para comprender la criminalidad de sus actos.

su empleado "Pintos Lugo había ido [a] buscar el cheque a la división de finanzas y había firmado el recibo de los cheques".(4) El apelante no acudió a buscar el cheque, sino que la oficinista Arroyo Espada vino donde él (a su oficina) a entregarle el cheque.

Tampoco el referido cheque fue cambiado en efectivo ilegalmente. La cajera de la Cooperativa, testigo del Ministerio Público, declaró que el apelante *por lo regular* cambiaba el cheque de $360 a la vez que depositaba otro cheque por $166, y que *con frecuencia* realizaba esa transacción para el señor González Cruz. Tanto los depósitos como el cambio en efectivo del cheque de dietas eran transacciones que el apelante realizaba con regularidad con la autorización de su jefe. El Ministerio Público no aportó prueba de que en esta ocasión el señor González Cruz hubiese variado estas instrucciones. El dinero en efectivo, producto del cambio del cheque, no fue poseído ilegalmente por el apelante. Por haber salido del país el señor González Cruz, no era factible para el apelante entregarle el dinero hasta que éste regresara del exterior por lo que, entre tanto, la posesión del dinero era legal.

Al examinar la prueba documental nos percatamos que los endosos de ambos cheques son idénticos, tanto el que se depositó como el que se cambió en efectivo. El cheque cambiado, núm. 010477, por la suma de $360 constituye el *Exhibit* I del Pueblo. El cheque depositado, núm. 010523, por la suma de $166.66 constituye el *Exhibit* I por estipulación de las partes y tiene al dorso idéntica información que el cheque anterior. El apelante realizaba ambas transacciones con frecuencia con la autorización de su jefe, el señor González Cruz.

La transacción del cambio del cheque en efectivo ocurrió el jueves 31 de julio. El señor González Cruz regresó de vacaciones, conforme a su propio testimonio durante el jui-

---

(4) Así lo declaró el señor González Cruz en el contrainterrogatorio. Véase E.N.P., pág. 3.

cio, el domingo 3 o el lunes 4 de agosto. El apelante voluntariamente lo visitó en su residencia "pocos días después de regresar". Allí, el apelante le mostró un recibo por haber pagado una mensualidad de una cuenta del señor González Cruz y le entregó en efectivo el balance de $180. Obviamente, el pago de tal cuenta sólo pudo haberse realizado si el propio señor González Cruz hubiese dado al apelante los datos necesarios para hacer tal pago (*e.g.*, núm. de préstamo, mensualidad del préstamo, institución bancaria).

Durante esa visita a su hogar, según lo que el Representante declaró en juicio, el señor Pintos Lugo voluntariamente "le indicó que hab[í]an tenido necesidad de un dinero de emergencia y había utilizado los $360.00 que correspondían al cheque". E.N.P., pág. 3. Considerando que transcurrieron pocos días entre el recibo del cheque por parte del apelante y la entrega del dinero al señor González Cruz, esta supuesta admisión por parte del apelante —en el sentido de que había utilizado la *totalidad del cheque*— no es susceptible de ser interpretada, no es compatible con el hecho de que el apelante le pagó a su jefe la mensualidad del préstamo por una suma ascendente a $180. No obstante, aunque concluyéramos que admitió haber utilizado la totalidad de los $360, esto no necesariamente implica que admitió haberse apropiado de este dinero. Veamos.

## B. *Manifestaciones y conducta del apelante*

Aún cuando el apelante hubiese utilizado la totalidad de los $360, en este caso no existe la intención criminal para configurar el delito de apropiación ilegal. Si bien el Art. 7 (5) del Código Penal, *supra*, define "apropiare" como que incluye "malversar, defraudar, ejercer control ilegal, usar, sustraer, apoderarse, o en cualquier forma hacer propio cualquier bien o cosa en forma temporal o permanente", el uso temporal del bien tiene que hacerse con la intención criminal. La falta de intención criminal queda demostrada

por la totalidad de las circunstancias involucradas en la situación en específico de que se trate.

Como ya señalamos, el apelante estaba en la posesión legal del dinero en efectivo debido a la autorización dada por su jefe, a quien el apelante no podía entregarle dicha suma hasta tanto regresara de viaje. El uso temporero del bien efectuado por el señor Pintos Lugo no puede catalogarse como criminal. A lo sumo, estamos frente a un error de juicio de parte del acusado apelante. La evidencia circunstancial demuestra que obviamente éste creyó que debido a la relación de confianza existente entre él y su jefe, en ausencia de éste último y en caso de emergencia, él tenía autorización tácita para utilizar el dinero, durante un breve lapso de tiempo, a manera de préstamo. Siempre y cuando, claro está, que lo repusiera y entregase al volver su jefe de vacaciones.[5]

Por la propia declaración del supuesto perjudicado sabemos que el apelante fue diligente en entregarle el dinero. En primer lugar, el apelante acudió voluntariamente a la residencia del señor González Cruz a hacerle entrega del dinero. No esperó a que su jefe lo llamase o lo buscase para reclamarlo. Tampoco dejó que pasara mucho tiempo. Acudió donde su jefe a los pocos días de éste regresar. En segundo lugar, durante esa visita el apelante informó *también voluntariamente y sin que fuese necesario* que había tenido una emergencia y había tenido que utilizar el dinero. En esa ocasión le mostró al señor González Cruz un recibo, el pago de la mensualidad de un préstamo, y le entregó el balance correspondiente. No retuvo suma al-

---

[5] Amerita que se destaque el *Exhibit* II del Pueblo. Este consiste en la hoja de depósito que llevó el apelante el 31 de julio de 1986 para depositar tres (3) cheques a la cuenta del señor González Cruz. El total de los cheques depositados (por $555.25, $566.35 y $166.66) fue por la suma de $1,288.26. Si el apelante hubiese querido cambiar en efectivo cualquiera de estos cheques con el propósito de apropiarse ilegalmente del dinero, lo pudo haber hecho fácilmente. Sin embargo, el testimonio de la cajera de la Cooperativa de Ahorro y Crédito de la Policía de Puerto Rico fue que el apelante sólo cambió en efectivo el cheque de $360 que era aquel que con regularidad hacía efectivo.

guna para sí. En tercer lugar, en vez de guardar silencio sobre el uso que había hecho del dinero durante una emergencia, se lo informó a su jefe. Esto demuestra el grado de confianza que existía entre ambos. Después de todo, si el acusado apelante no hubiese informado al señor González Cruz sobre el uso del dinero, éste jamás se hubiese enterado. La admisión hecha por el acusado y toda su conducta reflejan precisamente que no tenía la intención de apropiarse del dinero perteneciente al señor González Cruz (lo cual se requiere para cometer el delito).

Avala esta conclusión la propia conducta del señor González Cruz de esperar más de un (1) año para acusar al apelante por estos hechos (⁶) y entonces, de acuerdo con su propio testimonio, sólo lo hizo porque le fue imposible cobrarle otra deuda al apelante. Obviamente el señor González Cruz no consideró que el uso del dinero por parte de su empleado, para una emergencia y por tan corto lapso de tiempo, era una conducta delictiva y configuraba el delito de apropiación. Las actuaciones del señor González Cruz lo que reflejan es que éste había dado una anuencia tácita al uso del dinero, la cual ratificó, también tácitamente, al ser informado de este hecho por el propio acusado apelante. Conforme a sus propias declaraciones durante el contrainterrogatorio, de no haber sido porque el apelante le debía algún dinero por otro concepto, el señor González Cruz no lo hubiese denunciado.(⁷)

Resulta significativo que la conducta del apelante no perjudicó a nadie, puesto que el señor Pintos Lugo realizó el pago del préstamo de su jefe y el Representante recibió el restante del importe del cheque casi inmediatamente

---

(⁶) Nótese que desde la entrega del dinero hasta la fecha de la denuncia (12 de agosto de 1987) transcurrió más de un (1) año.

(⁷) No surge del testimonio del señor González Cruz el motivo de dicha deuda, pero no hubo evidencia en el juicio que relacionase la suma adeudada al testigo con el cheque de $360. Cabe señalar que el tribunal no ordenó la restitución al señor González Cruz de suma alguna.

1032

después de regresar de sus vacaciones.([8]) Irónicamente, en este caso, al declarar culpable al señor Pintos Lugo lo que en realidad se ha logrado es penalizarlo por su honestidad al admitir que, durante una emergencia, usó el dinero que tenía en su posesión legítimamente. Por este acto de decir la verdad, acto que a lo sumo involucró el uso de un máximo de $360 por espacio de varios días, la sociedad, mediante la sentencia que hoy suscribe la mayoría de este Tribunal, le ha impuesto al acusado apelante Pintos Lugo "intereses más que usurarios": la pena de diez (10) años de presidio bajo el régimen de sentencia suspendida y el pago de $280 a favor del Estado.

Por todo lo antes expuesto procede revocar la sentencia apelada y, por lo tanto, disentimos.

---

(8) Aún cuando en el directo el señor González Cruz inicialmente testificó que nunca recibió el importe del cheque, luego aceptó haber visto el recibo del pago de su préstamo y admitió haber recibido del apelante el balance en efectivo.